# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Detention of | ) | No. 71292-6-I |
|  | ) |  |
| MARK A. BLACK, | ) | DIVISION ONE |
|  | ) |  |
| Appellant. | ) |  |
|  | ) | PUBLISHED |
|  | ) |  |
|  | ) | FILED: <u>August 24, 2015</u> |
|  | ) |  |
|  | ) |  |

Cox, J. — Mark Black appeals his order of commitment as a sexually violent predator. He claims that the trial court denied him his right to be present during a portion of jury selection. He further claims that the court abused its discretion in admitting expert opinion evidence diagnosing him with paraphilia not otherwise specified (NOS), persistent sexual interest in pubescent aged females, non-exclusive. He also claims that the State did not prove and the jury did not unanimously find that his claimed disorders caused him serious difficulty controlling his behavior.

We hold that Black was deprived of due process in this civil commitment case where portions of the jury selection proceeded in his absence. His express waiver of his presence during the first day of jury selection did not extend to the

second day of such selection from which he was absent. Accordingly, we reverse and remand for a new trial.

In October 2011, the State petitioned to civilly commit Black as a sexually violent predator. This was near the end of his prison sentence for his convictions of sexually violent offenses—child molestation in the second degree and attempted child molestation in the second degree. The State alleged that Black suffered from a mental abnormality and/or personality disorder that made him likely to engage in predatory acts of sexual violence.

In September 2013, pretrial motions and other proceedings occurred at the Maleng Regional Justice Center in Kent. At that time, the court and counsel discussed jury selection. During that discussion, counsel for Black stated:

> Just so Your Honor knows, if this helps with figuring this out at all, we are planning for Mr. Black to arrive on the second day of trial. So the first day, which the jurors may want to speak to us privately, he wouldn't have to be here for that. I think that can also help them be more open and honest about their history without having the person here accused of something like that. So our hope was to address those that first day, so that can be taken care of.[1]

The court agreed that this approach made sense.

On October 21, 2013, jury selection began. Consistent with Black's waiver of his presence for the first day of jury selection, the court told the members of the venire that Black "is not here today for this part of the jury selection. But he is coming tomorrow."[2]

---

[1] Report of Proceedings (Sept. 26, 2013) at 42-43.

[2] Report of Proceedings (Oct. 21, 2013) at 4.

The next day, October 22, 2013, this record reflects that Black was not present in court, as he requested. The minute entry for that date states:

> Counsel is present to proceed with trial, however, the Defendant is not present.
>
> Counsel states that the Defendant has not been brought up from the jail, even though he did not waive his presence from this point forward. The Court directs the Bailiff to contact the jail about the situation and report back to the Court.[3]

It appears from the record that there was an administrative problem because the jail did not have adequate personnel to accompany Black to the courtroom.

Nevertheless, jury selection continued. The court and counsel individually questioned several potential jurors who requested to be questioned out of the presence of others. Of these, three remained as potential jurors. The other two were excused.

Later that morning, counsel and the court had the following exchange:

> [Counsel]: If your Honor is going to bring out the rest of the jury to explain to them the reason for the delay, if that happens, Your Honor, we request that you not indicate anything having to do with being in custody and requiring two officers. And I'm concerned about that possible explanation to the jury would be detrimental to Mr. Black receiving a fair trial.
>
> [The Court]: Well, of course, I agree with you.
>
> [Counsel]: . . . I want to explain it to them, Your Honor, but I fear there may be some things that may be detrimental to Mr. Black. Other than that, I suppose we're in a situation where we should excuse the jury until tomorrow. I can't think of any other—
>
> [The Court]: Well, the alternative would be if Mr. Black would waive his presence. I don't know whether he wants to do that so we could move the case along.

---

[3] Clerk's Papers at 1430.

[Counsel]: Your Honor, I don't think that would be feasible for him.[4]

Just before the noon recess, the court released the prospective jurors for the day due to Black's absence. But individual questioning of several prospective jurors continued. Of these, one was retained. The rest were excused. The record does not show any voir dire that afternoon.

Black was present for jury selection during the next day, October 23, 2013.

In support of the allegations in its petition for involuntary commitment, the State included a 2008 evaluation and a 2011 "Evaluation Update" from Dr. Dale Arnold, a psychologist. Dr. Arnold diagnosed Black with three disorders: (1) sexual sadism; (2) paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive; and (3) personality disorder not otherwise specified (NOS) with antisocial and narcissistic characteristics.

Based on Frye v. United States[5] and ER 702, 703, and 403, Black moved to exclude Dr. Arnold's second diagnosis—paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive. He argued that the diagnosis was the equivalent of "hebephilia" and that hebephilia is not generally accepted in the relevant scientific community as a valid diagnosis. In response, the State moved to strike the Frye hearing, arguing that there was nothing new or novel

---

[4] Report of Proceedings (Oct. 22, 2013) at 50-51.

[5] 54 App. D.C. 46, 293 F. 1013 (1923).

4

about Dr. Arnold's diagnosis of paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive. The State further argued Black's diagnosis was distinct from hebephilia.

At a hearing on the motions, Black offered testimony from psychologist Dr. Karen Franklin. Dr. Franklin testified that there was "no consistent definition of what hebephilia is." And she described the general criticisms of this diagnosis. Dr. Arnold did not testify at this hearing.

At the conclusion of the hearing, the trial court granted Black's motion to exclude evidence regarding hebephilia. But the trial court denied the motion with respect to the diagnosis in this case—paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive. The court ruled that this latter diagnosis of Black was different from hebephilia and not inadmissible under Frye.

At the conclusion of the trial, the jury found beyond a reasonable doubt that Black suffers from a mental abnormality and/or personality disorder that causes him serious difficulty in controlling sexually violent behavior. It also found beyond a reasonable doubt that the mental abnormality and/or personality disorder makes Black likely to engage in predatory acts of sexual violence if not confined to a secure facility.

Based on the jury verdict, the trial court entered an order of commitment. Black appeals.

5

## DUE PROCESS RIGHT TO BE PRESENT

Black first argues that the trial court denied him his right to be present at trial and to participate in a "critical stage" of proceedings.[6] He relies on Washington criminal cases and civil cases from other jurisdictions.

The question is whether a respondent in an involuntary civil commitment proceeding has a right to be present during jury selection. No Washington appellate court has addressed this issue.

Black asserts that, like a criminal defendant, he had a right to be present and participate in this "critical stage" of trial. He further claims that this violation requires the State to prove that his absence was harmless beyond a reasonable doubt. In contrast, the State asserts that, as a civil litigant, Black does not have the specific right to be present for every "critical stage" of the trial. Rather, the State contends that the inquiry is whether Black has been deprived of fundamental fairness as guaranteed by due process, under the test enunciated in Mathews v. Eldridge.[7] We agree with the State on the governing test.

We hold that Black had a due process right to be present during jury selection in this civil commitment proceeding. Applying the Mathews test, we conclude that his absence during a portion of jury selection violated that right. Accordingly, we reverse and remand for a new trial.

---

[6] Appellant's Opening Brief at 9-18.

[7] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Washington courts have repeatedly refused to extend to SVP respondents all the rights of criminal defendants.[8] For example, this court expressly declined to extend article I, section 22 of the state constitution to SVP cases.[9] Rather, courts consistently hold that SVP respondents "must rely solely on the guaranty of 'fundamental fairness' provided by the due process clause."[10]

In re Detention of Stout is particularly instructive.[11] There, the supreme court considered whether an SVP detainee had a due process right to confront witnesses.[12] The court stated at the outset, "[W]e take this opportunity to reiterate that although SVP commitment proceedings include many of the same protections as a criminal trial, SVP commitment proceedings are *not* criminal proceedings."[13] The court further stated that "the Sixth Amendment right to confrontation is available only to criminal defendants."[14] Thus, the court

---

[8] See, e.g., In re Det. of Strand, 167 Wn.2d 180, 191, 217 P.3d 1159 (2009); In re Det. of Leck, 180 Wn. App. 492, 503, 334 P.3d 1109, 1115, review denied, 335 P.3d 941 (2014); In re Det. of Ticeson, 159 Wn. App. 374, 380-81, 246 P.3d 550 (2011).

[9] Ticeson, 159 Wn. App. 381.

[10] Strand, 167 Wn.2d at 191.

[11] 159 Wn.2d 357, 150 P.3d 86 (2007).

[12] Id. at 368-75.

[13] Id. at 368-69 (emphasis in original).

[14] Id. at 369.

determined that it would only entertain Stout's confrontation claim with respect to his claimed rights in that case to both due process and equal protection.[15]

The court then stated that civil commitment is a significant deprivation of liberty.[16] And "individuals facing commitment, especially those facing SVP commitment, are entitled to due process of law before they can be committed."[17]

Due process is a flexible concept that, at its core, is a right to be meaningfully heard.[18] But the minimum requirements of due process depend on what is fair in a particular context.[19]

The Stout court applied the Mathews test to determine whether due process was satisfied.[20] Under that test, in order to determine what procedural due process requires in a given context, courts balance the following three factors: (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures.[21]

---

[15] Id.

[16] Id.

[17] Id.

[18] Id. at 370.

[19] Id.

[20] Id. at 370-72.

[21] Id. at 370.

Here, Black expressly waived his presence for the first day of jury selection. And the record is clear that he did so for the strategic reasons we explained earlier in this opinion. There is no dispute that he had the right to expressly waive his presence during the first day of jury selection, with or without explaining his reasons for doing so.

Accordingly, the focus of our analysis is whether his absence from the second day of jury selection violated due process in this case. Accordingly, we apply the Mathews test to that portion of jury selection.

*The Private Interest Affected*

There can be no serious dispute that this first factor weighs heavily in Black's favor. Black has a significant interest in his physical liberty.[22] Involuntary commitment constitutes a massive curtailment of this liberty.[23] The State concedes this.[24]

*Risk of Erroneous Deprivation Through Existing Procedures*

The question for this factor is whether Black's absence from the second day of jury selection risked erroneously depriving him of his physical liberty. We conclude that it did.

We first note that a review of the record shows that both the court and counsel were concerned about the efficient use of time in selecting a jury. We

---

[22] See id.

[23] Id. at 369.

[24] Brief of Respondent at 22.

understand that it was in no one's interest in having prospective members of the jury sitting around waiting for unreasonable amounts of time. We do not fault anyone for keeping this goal in mind while the administrative problem with the jail was sorted out.

Nevertheless, this does not lessen the need to assess the second factor under Mathews. In analyzing this factor, we first recognize that there are several existing protections within chapter 71.09 RCW.[25] For example, an SVP respondent has the right to a twelve person jury.[26] At trial, the State carries the burden of proof beyond a reasonable doubt and the verdict must be unanimous.[27] Further, at all stages of the proceedings, the respondent has the right to counsel, including appointed counsel.[28] We acknowledge that these statutory safeguards help protect against an erroneous deprivation of liberty.[29]

But there is a very high probable value of ensuring that an SVP respondent is present during jury selection for this civil proceeding. In reaching this conclusion, we are guided by State v. Irby.[30]

---

[25] See Stout, 159 Wn.2d at 370.

[26] RCW 71.09.050(3).

[27] RCW 71.09.060(1).

[28] RCW 71.09.050(1).

[29] See In re Det. of Morgan, 180 Wn.2d 312, 321-22, 330 P.3d 774 (2014); In re Det. of Coe, 175 Wn.2d 482, 510-11, 286 P.3d 29 (2012); Stout, 159 Wn.2d at 370-71.

[30] 170 Wn.2d 874, 246 P.3d 796 (2011).

10

In that case, the supreme court decided whether email exchanges regarding excusing potential jurors in a criminal case between the court and all counsel violated Irby's right to be present for a "critical stage."[31] A criminal defendant has a right to be present at a proceeding "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[32] The right to be present "'is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'"[33]

Albeit Irby was in a different context than this civil commitment proceeding, it provides useful guidance in applying the Mathews test for due process that is before us.

Irby emphasized the significance of the accused's presence during jury selection. The supreme court noted that voir dire bears "'a relation, reasonably substantial, to [a defendant's] opportunity to defend'" because it would be in [the defendant's] power "'to give advice or suggestion or even to supersede his lawyers altogether'" about the composition of the jury.[34] The court further noted that jury selection is the "primary means" by which a court may enforce an accused's right to be tried by a jury free from "'ethnic, racial, or political prejudice,

---

[31] Id. at 881.

[32] Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

[33] Id. (quoting Synder, 291 U.S. at 107-08).

[34] Id. at 883 (quoting Snyder, 291 U.S. at 106).

or predisposition about the defendant's culpability.'"[35] The supreme court concluded that Irby's absence from a portion of jury of jury selection violated his right to be present.[36]

In our view, these same concerns are present in this SVP proceeding. The court and both counsel examined potential jurors during Black's absence on the second day of jury selection. Jurors 7, 48, 61, 70 and 74 were individually questioned that morning. That occurred because each had indicated a request for individual questioning out of the presence of the other potential members of the jury. As a result of this questioning, Jurors 7, 48, and 70 remained in the jury pool. The others were excused.

This was done without Black having the ability to exercise his personal judgment and to consult with counsel about the retention of these three potential jurors. In short, he was unable to ensure that his jury was free from either prejudice or predisposition in this proceeding to commit him as a sexual predator.

Likewise, Black had no ability to exercise his personal judgment or to consult with counsel about the jurors that were individually questioned later that morning. The court and counsel questioned five additional prospective jurors after the initial round, excusing one for hardship, one for cause, two for language difficulties, and retaining one more potential juror.

---

[35] Id. at 884 (quoting Gomez v. United States, 490 U.S. 858, 873, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989)).

[36] Id.

In short, given the significance of this phase of jury selection and the high value of Black's presence during it, we cannot conclude that the existing procedural safeguards during this phase were sufficient. To the contrary, we conclude that there was an erroneous risk of deprivation of Black's right to his physical liberty by his exclusion from participation in this portion of jury selection.

The State argues that the risk under this second factor is "nonexistent." We disagree.

The State asserts that "Black's experienced trial attorneys were present and ably represented his interests."[37] But as Irby explained, the right to be present for jury selection is important to the opportunity to defend because of the power to "'give advice or suggestion or even to supersede . . . lawyers altogether.'"[38] As this explanation makes clear, counsel's judgments about suitable jurors do not supplant those of the client. There is significant value to having a respondent in an SVP proceeding involved during this process. Thus, this argument is not persuasive.

The State also argues that Black's absence during individual questioning was strategic. This misreads the record. Black's absence during the first day of jury selection was strategic. But a fair reading of this record makes clear that he did not waive his presence for jury selection on the second day. Black's counsel twice made this abundantly clear to the court, and the court eventually released

---

[37] Brief of Respondent at 22.

[38] Irby, 170 Wn.2d at 883 (quoting Snyder, 291 U.S. at 106).

potential jurors due to Black's absence. The State's argument to the contrary is not convincing.

*Governmental Interest of Additional Procedures*

The State has an interest in protecting the community from sex offenders who pose a risk of reoffending.[39] But in this case, there were no additional procedures required, only compliance with those previously envisioned— ensuring Black's presence during the second day of jury selection.

The State argues that requiring the court to retain jurors who should have been excused would have placed an undue burden on the prospective jurors themselves and would undermine judicial economy. That may be so. But the more likely choice was for the court to have released prospective jurors earlier due to Black's absence. In that case, there would have been delay in selecting a jury. But it is difficult to believe that doing so would have imposed substantial additional costs or administrative burdens on the State.

Balancing Black's interests against those of the State under these three factors, we hold that Black had a due process right to be present during the second day of jury selection. We further hold that this right was violated when jury selection proceeded in his absence.

In In re Young, the supreme court cited the Mathews test and concluded that due process required that a 72-hour hearing be available to SVP detainees.[40] But the court then stated, "While this requirement was not complied

_____

[39] Stout, 159 Wn.2d at 373.

[40] 122 Wn.2d 1, 43-47, 857 P.2d 989 (1993).

14

with here, it had no bearing on the ultimate outcome of petitioners' trials; thus the omission in this instance does not require reversal."[41]

Here, on this record, we cannot say that this violation had no bearing on the ultimate outcome of this trial. Accordingly, we reverse and remand for a new trial.

*RAP 2.5*

The State argues that Black did not object on the record to his absence from jury selection. It also argues that he cannot raise this due process issue for the first time on appeal under RAP 2.5(a)(3). We disagree.

The record shows that Black waived being present for the first day of jury selection but not the second—October 22, 2013. The court clearly understood this and so stated to the jury before voir dire commenced. On the second day of jury selection, counsel twice raised Black's absence as problematic, both before individual voir dire resumed and later. Black preserved this issue for appeal. Because he did so, we need not address whether he can raise this issue under RAP 2.5(a).

## EVIDENTIARY RULINGS

Black next argues that the trial court improperly admitted expert opinion testimony that he suffers from paraphilia NOS, persistent sexual interest in pubescent females, non-exclusive. He also contends that the trial court deprived

---

[41] Id. at 47; but see State v. Brousseau, 172 Wn.2d 331, 363, 259 P.3d 209 (2011) (Owens, J. dissenting) (applying a constitutional harmless error analysis to a procedural due process violation).

him of his ability to challenge this diagnosis when it excluded evidence of hebephilia. These issues are likely to recur on remand. Accordingly, we address them to a limited extent.

"The Frye standard requires a trial court to determine whether a scientific theory or principle 'has achieved general acceptance in the relevant scientific community' before admitting it into evidence."[42] "'[T]he core concern . . . is only whether the evidence being offered is based on established scientific methodology.'"[43]

If the Frye test is satisfied, the trial court must then determine whether expert testimony should be admitted under the two-part test of ER 702, which considers whether the witness qualifies as an expert and whether the expert's testimony would be helpful to the trier of fact.[44]

This court reviews de novo a trial court's ruling under Frye.[45] And we review for abuse of discretion a ruling under ER 702.[46]

Here, on the basis of Frye and ER 702, 703 and 403, Black challenged Dr. Arnold's diagnosis of paraphilia NOS, persistent sexual interest in pubescent

---

[42] In re Det. of Thorell, 149 Wn.2d 724, 754, 72 P.3d 708 (2003) (internal quotation marks omitted) (quoting Young, 122 Wn.2d at 56).

[43] Id. (alterations in original) (internal quotation marks omitted) (quoting Young, 122 Wn.2d at 56).

[44] State v. Copeland, 130 Wn.2d 244, 256, 922 P.2d 1304 (1996).

[45] State v. Greene, 139 Wn.2d 64, 70, 984 P.2d 1024 (1999).

[46] Id.

aged females, non-exclusive. He argued that this diagnosis was the same as hebephilia and that hebephilia is not generally accepted as a valid diagnosis within the psychiatric and psychological communities.

At the Frye hearing, Black presented testimony from Dr. Karen Franklin. Dr. Franklin testified that there is "no consistent definition" of the hebephilia diagnosis.[47] She also testified that hebephilia is a controversial diagnosis, because "the idea that sexual attraction to adolescents is somehow deviant or disordered, it goes against pretty much the mainstream of science and the mainstream of popular culture . . . ."[48] She further testified that there is no reliable method to diagnosing hebephilia, because it is "a moving target that keeps changing."[49] And she testified that a proposal to include hebephilia in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V) was rejected after much criticism.[50]

Dr. Arnold, the State's expert providing the diagnoses of Black in this case did not testify at this hearing. He did testify at trial.

After considering Dr. Franklin's testimony at the Frye hearing and the briefing from the parties, the trial court concluded that hebephilia is not a generally accepted diagnosis in the psychological community. However the trial

---

[47] Report of Proceedings (Sept. 13, 2013) at 35.

[48] Id. at 39-40.

[49] Id. at 40.

[50] See id. at 53-60.

court found that Dr. Arnold did not diagnose Black with hebephilia, but rather, that he diagnosed Black with paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive. Further, the court concluded that Dr. Arnold's diagnosis and methodology were generally accepted in the psychological community, thus meeting Frye.

Black asserts on appeal that the trial court correctly concluded that hebephilia is not a generally accepted diagnosis. The State did not cross-appeal the trial court's adverse ruling on this issue.

However, in its briefing on appeal, the State argues that it "does *not* concede that evidence regarding hebephilia should be excluded under the Frye standard."[51] It asserts that "whether hebephilia is a generally-accepted psychiatric diagnosis remains an open question in Washington."[52] But the State argues on appeal that the diagnosis of paraphilia NOS, persistent sexual interest in pubescent aged females, non-exclusive is different from a hebephilia diagnosis. Thus, its position is that Dr. Arnold's diagnosis of Black is not excludable on the basis of Frye.

The State asserts that Dr. Franklin described "hebephilia" as a sexual attraction to adolescents in general.[53] And it distinguishes between "adolescent" and "pubescent" to argue that hebephilia is broader than the diagnosis here. The

---

[51] Brief of Respondent at 26.

[52] Id.

[53] Id. at 27.

State also argues that Black's diagnosis is consistent with the DSM. In doing so, it relies on the definitions of "paraphilia" and "paraphilic disorder" in the DSM-V.[54] But Dr. Arnold's diagnosis of Black was done with respect to the DSM-IV, not the DSM-V. We do not find the specific language on which the State relies in its argument on appeal in the DSM-IV.

For these and other reasons, we do not decide, on this record, whether hebephilia is excludable on the basis of Frye.[55] Likewise, we do not decide, on this record, whether the diagnosis in this case—paraphilia NOS, persistent sexual attraction to pubescent females non-exclusive is sufficiently distinct from hebephilia or otherwise excludable on the basis of Frye. Finally, we do not decide another issue that the State argues on appeal: whether and to what extent a diagnosis based on the International Statistical Classification of Diseases and Related Health Problems, 10th Revision (ICD-10) is excludable on the basis of Frye. On remand, the parties will have the opportunity to develop a better record and present to the trial court relevant case and other authorities to address these and related issues.

---

[54] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 685-86 (5th ed. 2013) ("The term *paraphilia* denotes any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners. . . . A *paraphilic disorder* is a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others.").

[55] See In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 645, 343 P.3d 731 (2015).

Black also argues that the court's <u>Frye</u> ruling undermined the fairness of the proceedings because it hampered his ability to challenge Dr. Arnold's diagnosis. Because we do not decide the <u>Frye</u> issues and remand for a new trial, we need not address this claim.

## SUFFICIENCY OF THE EVIDENCE

Finally, Black argues that the State did not prove that each of the alternative means of commitment caused the lack of volitional control constitutionally required for civil commitment. We also need not address this issue because of the reversal and remand for a new trial.

We reverse the order of commitment and remand for a new trial.

Cox, J.

WE CONCUR:

Trickey, J