[No. 19416.   *En Banc.*   July 15, 1926.]

J. M. RUPE *et al., Respondents,* v. WILL A. ROBISON, *Appellant.*[1]

[1] DIVORCE (18)—GUARDIAN AND WARD (16)—PARTIES—ACTIONS —DIVORCE IN CASE OF INSANE WIFE. A husband who is the general guardian of his insane wife may maintain an action for divorce, where the court appoints a guardian *ad litem* to contest the case and represent her in the divorce action.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered June 1, 1925, in favor of the plaintiffs, upon stipulated facts, in an action for rescission. Reversed.

*Russell R. Farrell* and *James G. Combs,* for appellant.

*Revelle, Revelle & Kells,* for respondents.

ASKREN, J.—This is an action to rescind a contract, whereby conveyances were made between the parties, upon the ground that title to the property delivered pursuant thereto by defendant Will A. Robison had a cloud thereon. The case was tried upon stipulated facts. Briefly summarized they are: the wife of the defendant Robison was declared insane in 1913, and he was appointed her general guardian. He later brought suit for divorce on the ground that his wife had incurable dementia. The prayer was for divorce and possession of the community real estate of the parties. The insane wife was served by delivering to her personally a copy of the summons and complaint, as well as by delivering a copy thereof to the superintendent of the western state hospital, where she was confined, as provided by law. Upon request of the

[1]Reported in 247 Pac. 954.

husband, the court appointed an attorney to appear as guardian *ad litem* in the divorce action upon behalf of the wife. The guardian *ad litem* filed his answer and appeared in contest of the proceedings. At the trial, the husband testified in support of the allegations of his complaint, and also that he was her general guardian. The court granted a decree of divorce and set over to the husband the real property in question. Certain of the real property was later transferred to the plaintiffs in this action. Thereafter, suit was brought to set aside the conveyance upon the ground that the husband's failure to resign as general guardian, prior to the trial of the divorce action, constituted a cloud upon the title. The trial court upheld this contention, and entered its judgment accordingly.

It should be borne in mind that this was not an action by a guardian to determine any rights in connection with his guardianship, and that the only issue presented to the trial court and made the basis of appeal to this court is:

[1] Can the husband of an insane wife, while acting as her general guardian, maintain an action for divorce, if the court, with power to appoint, and jurisdiction to hear the matter, appoints a guardian *ad litem* for the wife to contest the proceedings.

There is no contention made in this case that the guardian *ad litem* failed in the performance of his duty in the representation of the insane wife, or that he was prevented from the full discharge of his duty by reason of the fact that the husband had failed to resign as general guardian. Nor is there any claim of fraud on the part of the husband or concealment of his position as general guardian.

The appointment of a general guardian for an insane person does not prevent the appointment of a

guardian *ad litem* by the court whenever it sees fit, for § 1581, Rem. Comp. Stat. [P. C. § 9913], provides:

"Nothing contained in this chapter shall affect or impair the power of any court to appoint a guardian to defend the interests of any minor, insane or mentally incompetent person interested in any suit or matter pending therein, or to commence and prosecute any suit on his behalf."

It is the contention of respondent that, since guardians represent their wards in all proceedings in which the interests of such wards are attacked, a guardian is prohibited from bringing an action against his ward. This rule is too well settled to admit of controversy. It is well stated in 28 C. J. 1245, as follows:

"A guardian cannot maintain an action at law against a ward pending the guardianship, or before his account is adjusted and settled."

It is also stated in 12 R. C. L., p. 1148, as follows:

"That an action at common law cannot be maintained between a guardian and a ward, while that relation exists, is clear. The character of the relation, the capacity in which the guardian acts, the duty to the ward's property (even if a guardian ad litem may be appointed where he is interested), forbid that he should occupy the distinctly· adverse position of suitor at common law, especially as to transactions occurring since the guardianship commenced. . . . even if the guardian have an equitable right against the ward which he may justly assert, as for partition of lands in which he and the ward are cotenants, he must make the ward a defendant instead of a co-plaintiff, and the ward must be represented by an independent guardian ad litem and by a different counsel."

The reason underlying the rule which prevents a guardian from suing his ward is well stated in the case of *Davis v. Davis,* 135 Miss. 214, 99 South. 673:

"At the time the complainant (appellant) instituted this suit she was the guardian of the appellee (defendant). As such guardian it was her duty to care for and manage the estate of the ward and report her acts and doings to the chancery court. It was her duty to defend any suits brought against her ward. The service of any process in any suit against the ward contemplates a service of this process also upon the guardian. The positions of guardian of a ward and of complainant in a suit against this ward are antagonistic. As long as this relationship exists, a guardian cannot maintain a suit against the ward; and neither can the ward against the guardian, except under certain exceptional circumstances not here involved."

But the reasons therein stated do not exist in an action such as this, where the court has appointed a guardian *ad litem* for the purpose of the protection of the ward's interests. A guardian *ad litem* has full and complete power to represent the ward in all those things necessary to the prosecution or defense of a suit in which the ward is interested. So far as the instant case is concerned, the guardian *ad litem* was able to, and did, do everything that could have been done by him, if the husband had resigned as general guardian; and the appointment of the guardian *ad litem,* at least so far as any of the matters connected with this suit are concerned, completely divested the general guardian of all jurisdiction therein. When all the reasons for the rule cease to exist, there is no necessity for its application. It is contended, however, that the rule stated in the quotation from R. C. L. *supra,* is conclusive of this action. This is based upon that portion of the quotation as follows:

"The character of the relation, the capacity in which the guardian acts, the duty to the ward's property (even if a guardian ad litem may be appointed where he is interested), forbid that he should occupy the dis-

tinctly adverse position of suitor at common law, especially as to transactions occurring since the guardianship commenced."

The authority for this statement is the case of *McLane v. Curran,* 133 Mass. 531, 43 Am. Rep. 535, which was an action by a guardian to recover from his ward for necessaries furnished by him. The statement of the case does not disclose that a guardian *ad litem* was appointed in that action, the court contenting itself with the statement, "the character of that relation, the capacity in which the guardian acts, the duty to the ward's property (even if a guardian *ad litem* may be appointed where he is interested) forbid that he should occupy the distinctly adverse position as suitor at common law, especially as to transactions occurring since the guardianship commenced." This statement is somewhat ambiguous, for it might be construed either that the action could not be maintained, even though a guardian *ad litem* had been appointed, or, that, even though the court had power to appoint a guardian *ad litem* (none having been appointed), the action must fall.

The learned author of R. C. L. evidently realized this fact, for a comparison of the statement in *McLane v. Curran, supra,* and the one from 12 R. C. L., cited above, shows they are stated in the identical language, even including the words in parenthesis. But two other cases have been cited which appear to follow this holding. One of those is *Kidd v. Prince,* 215 S. W. (Tex.) 844, where the court held that a father, while guardian of his minor children, could not maintain a suit against them to divest them of their interest in certain property. The court in that case cited the decision in *McLane v. Curran, supra,* and R. C. L., as authority for the holding, evidently assuming that in *McLane v.*

*Curran* a guardian *ad litem* had actually been appointed.

The other case is *Iturri v. Whitehead,* 22 Tex. 556, cited in *Kidd v. Prince, supra.* In that case, Whitehead brought suit against two minor children and their guardian for an interest in certain real estate. During the progress of the suit Whitehead became guardian of the minors. The same attorney who previously represented the defendants was then appointed guardian *ad litem.* The court reversed the judgment, because unsupported by the evidence. It also added:

"It would seem on general principles that after it became apparent to the court that the plaintiff had been appointed guardian of the defendants that the suit ought to have been dismissed, but as this point has not been noticed by counsel in argument it need not now be decided."

Investigation of the authorities discloses no well-reasoned case where it has been held that a husband, while general guardian of his insane wife, cannot maintain an action for divorce, if a guardian *ad litem* is appointed to represent her interests. The insane wife, having been represented upon the trial of this action by a guardian *ad litem* appointed for the express purpose of contesting the proceedings, and who, for the purpose of the litigation, had full power on her behalf to take an adverse position to that of the general guardian, with full and complete charge of all the questions involved, including that of the marital relation, the property of the parties, and all rights incident thereto, it clearly appears that the general guardian could not, in any sense, have acted for or on behalf of the wife in the divorce proceedings, and that a judgment rendered against her therein is valid.

It follows that there was no cloud upon the title to

the property distributed by the court to the husband therein.

The judgment is reversed.

Tolman, C. J., Fullerton, Parker, Mackintosh, Mitchell, and Main, JJ., concur.

Holcomb, J., dissents.