[No. 33682.  Department Two.  June 6, 1957.]

ELEANOR FLAHERTY, *Respondent*, v. JOHN G. FLAHERTY, *Appellant*.[1]

*Claire Wheeler Seltzer*, for appellant.

*Neal Clark, Geo. H. Rummens, Kenneth P. Short, Paul R. Cressman*, and *R. M. Oswald*, for respondent.

WEAVER, J.—June 18, 1955, plaintiff Eleanor Flaherty commenced an action for divorce against John G. Flaherty. Mr. Flaherty signed and acknowledged a written admission of service of the summons and complaint.  June 28, 1955, the parties entered into a property settlement agreement, which was approved by the court when a default decree of divorce was entered on September 20, 1955, by Judge William J. Wilkins.

It is not disputed that Mrs. Flaherty had a serious heart condition before the decree of divorce was entered.  November 6, 1955, Mrs. Flaherty suffered a severe stroke.  Her mind remained clear until about November 9th.  She was taken to

[1]Reported in 312 P. (2d) 205.

Harborview hospital November 17, 1955, and was still there at the time of a subsequent hearing, which we will describe later.

A close friend of Mrs. Flaherty described her mental condition as follows:

"Q. What is the condition of her mind now? A. Well, she is—in some things it is clear, but most of her mind is blocked from that blood clot, and nothing goes through one way or the other. There are certain little things around the edge of it, so to speak, she is clear on, but the rest of it is blocked."

Mrs. Flaherty's brother testified:

"Q. And how long have you felt that she was in need of a guardian? A. Well, prior to November 17, about a week. I heard she was in pretty bad shape, and my wife and I had gone over there, just prior to that even. And her speech seemed to be from a paralytic stroke impaired a little. And she kept getting worse. And I stayed there with her night and day. And my brother stayed there with her some. My wife wasn't able to go over there. She has arthritis. And the 17th of November, I just had to do something. I called the ambulance and took her to the hospital. I asked her permission different times, but *she couldn't talk.* But she seemed to get excited when I would say that. But, finally, I just thought that I had left it go too long already. And I took the matter in my own hands and called an ambulance, and forced her to go." (Italics ours.)

November 18, 1955, the day after Mrs. Flaherty was taken to the hospital, Mr. Flaherty signed an affidavit, and his counsel filed a motion to vacate the decree in the divorce case. At that time, Mr. Flaherty knew that his wife had had a stroke. The same day, the presiding judge issued a show cause order returnable December 1, 1955.

Mrs. Flaherty's brother returned to her place of abode, shortly after he took her to the hospital, in order to get some of her property to protect it from theft. As he was leaving, a deputy sheriff drove up to the place.

" . . . I stopped, and walked back, and asked if he wanted to see Mrs. Flaherty. And he said he had some papers to serve on her. I asked him what they were. He said it was an annulment of the divorce. *I told him that my*

*sister was, practically, like a baby at the present time; she couldn't talk; couldn't make herself understood.* And he didn't give me any details of the paper, but he said '*Well, nothing to do but take them back to the attorney.*'" (Italics ours.)

November 25, 1955, Mrs. Flaherty was served with the show cause order. It is undisputed that she was served in the hospital and that her condition was as we have described it. Although the affidavit in support of the motion to vacate the decree of divorce alleged that Mr. Flaherty's signature to the written admission of service of summons and complaint "was procured by false representation and by undue influence of the attorney Neal Clark [counsel for Mrs. Flaherty]" as well as other charges of unprofessional conduct by Mr. Clark, nothing was served upon him.

Mr. Flaherty's counsel stated:

"My conception of my professional duty is to serve my client within the requirements. The requirement in this procedure is that this woman must be served. *I knew she was in a hospital.* I wanted the court to know that. We were very sorry. We want to get her out of that hospital if possible, and out of the county hospital. We knew she is, necessarily, a party. *She has to be served, there, just as incompetents have to be served.*" (Italics ours.)

Mrs. Flaherty had not been able to read since her stroke on November 6th. The papers served upon her were not disclosed to anyone capable of giving them attention until after December 1st.

On that date, Mr. Flaherty and his counsel presented themselves to the court, presided over by Judge George Revelle. Although counsel announced she was prepared to produce testimony, the court treated the hearing as a default matter. The next day, December 2, 1955, findings of fact, conclusions of law, and judgment vacating the decree of divorce were entered. The court found that Mr. Flaherty had not been served with summons and complaint; that his written admission of service had been secured by false representations; and that plaintiff (Mrs. Flaherty) had not given oral testimony in open court in support of her action for divorce.

Judge Wilkins and Judge Revelle then learned, for the first time, that they had been acting independently and in an inconsistent manner in substantially the same matter.

December 9, 1955, Judge Wilkins held a rehearing on Mr. Flaherty's motion to vacate the divorce decree secured by Mrs. Flaherty. On the same day, Judge Revelle entered an order setting aside his order of December 2, 1955, vacating the divorce decree of September 20, 1955. The order recites that Mrs. Flaherty was incompetent when served with the show cause order and that

". . . no guardian ad litem was requested upon the hearing of said order to show cause and plaintiff's [Mrs. Flaherty's] interests were unprotected . . ."

At the close of the testimony on December 9th, Judge Wilkins announced that he would deny Mr. Flaherty's motion to vacate the divorce decree. The record amply supports the findings of fact, conclusions of law, and order denying Mr. Flaherty's petition to vacate the divorce decree, which were entered December 16, 1955. Oral notice of appeal was given by counsel for Mr. Flaherty.

In *Townsend v. Price,* 19 Wash. 415, 416, 53 Pac. 668 (1898), it was pleaded that defendant, when process was served upon him in the state of Missouri, was confined to his bed in his last sickness, was not in a condition to attend to any business, and was *non compos mentis.* This court said:

"If the physical and mental condition of said defendant was known to the plaintiff, as is alleged in the answer, both at the time service was obtained and when judgment was rendered, it was incumbent on the plaintiff then to have suggested it to the court, in order that a guardian *ad litem* might be appointed."

The following year, the legislature enacted Laws of 1899, chapter 91, § 1, p. 144, now codified as RCW 4.08.060. It provides:

"When an insane person is a party to an action in the superior courts he shall appear by guardian, or if he has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act as guardian *ad litem.* . . ."

■ The incompetency of Mrs. Flaherty being known to Mr. Flaherty and to his counsel, Clair Wheeler Seltzer, it was incumbent upon them to advise Judge Revelle of her condition. *In re Miller,* 26 Wn. (2d) 202, 173 P. (2d) 538 (1946), illustrates the use of this procedure and our approval of it. In *Potter v. Potter,* 35 Wn. (2d) 788, 215 P. (2d) 704 (1950), we remanded the cause in order that a guardian *ad litem* might be appointed to represent the interest of an incompetent. It is apparent that this rule is broader than counsel's stated concept of her professional duty to her client. See Canon of Professional Ethics 15, 34A Wn. (2d) 131.

■ Although the *need* of a guardian or guardian *ad litem* for the protection of Mrs. Flaherty's interests and property was mentioned several times in the hearing before Judge Wilkins on December 9, 1955, we can find no place in the record which even suggests that such an appointment was made. Thus, the hearing before Judge Wilkins suffers from the same infirmity as the hearing before Judge Revelle.

The provisions of the statute are not satisfied by the participation before Judge Wilkins of Mr. Neal Clark, counsel for Mrs. Flaherty in the divorce proceedings. Neither does his appointment as guardian *ad litem* on January 27, 1956, to represent her "in all *subsequent* proceedings herein," supply the omission.

After this appeal had been taken, counsel stipulated that

"Arthur W. Davies has been discharged and H. C. Tingvall has been appointed and qualified in his place as guardian of the person and estate of Eleanor Flaherty, and that by reason thereof it is therefore stipulated that H. C. Tingvall, as guardian of the person and estate of Eleanor Flaherty, may be substituted for Arthur W. Davies as party respondent . . ."

It appears affirmatively that Mr. Davies was not Mrs. Flaherty's guardian on December 9, 1955.

In the original hearing, before Judge Revelle, there was a duty, as we have pointed out, upon Mr. Flaherty and his counsel to disclose to the court facts which would have resulted in the appointment of a guardian *ad litem*. In the

second hearing, before Judge Wilkins, there were those present (Mrs. Flaherty's former counsel and her two brothers) who might have requested the appointment of a guardian *ad litem*. For this reason, each party will bear his own costs on this appeal.

The order appealed from is reversed.

HILL, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

---

September 4, 1957. Petition for rehearing denied.