IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 71917-3-I |
| GEORGE J. LANE, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | |
| and | ) | PUBLISHED OPINION |
| | ) | |
| SHARON P. LANE, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 29, 2015 |

SCHINDLER, J. — A guardian ad litem (GAL) appointed under RCW 4.08.060 does not have the authority to waive a substantial right of the incapacitated person. Sharon Lane challenges the authority of the litigation guardian ad litem (LGAL) to enter into a Civil Rule 2A agreement (CR 2A Agreement) and waive her right to trial. Because the right to trial is a substantial right, the LGAL did not have the authority to enter into the CR 2A Agreement over Sharon's[1] objections. We reverse entry of the decree of dissolution, findings of fact and conclusions of law, the parenting plan, and the child support order, and remand for trial.

Sharon and George Lane married and had a child in 1999. During the majority of the marriage, George worked as a quality assurance manager. George is also an officer in the United States Navy Reserve.

---

[1] We refer to Sharon Lane and George Lane by their first names for clarity and mean no disrespect by doing so.

Sharon and George separated in 2008. In September 2008, George filed a petition for dissolution of the marriage. In 2010, Sharon and George reconciled. George dismissed the dissolution action.

In 2013, George filed a petition for dissolution of the marriage and a petition for entry of a domestic violence protection order (DVPO). On June 3, 2013, a court commissioner entered a one-year DVPO that prohibited Sharon from contacting George but allowed Sharon to have weekly supervised visitation with the child.

Sharon filed a pro se request for reasonable accommodation under GR 33. Sharon asked the court to appoint an attorney to represent her in the dissolution because her "disability prevents comprehension of process/proceedings." A court commissioner entered an order for reasonable accommodation and appointed an attorney to represent Sharon in the dissolution proceeding.

On July 26, Sharon filed a motion for a temporary order asking the court to order spousal maintenance, terminate the DVPO, and allow unsupervised visitation with the child. In her declaration, Sharon states her only source of income is $700 a month from Social Security disability.

The attorney also filed a motion for an order to appoint a GAL "to investigate and report back to the court as to whether or not Ms. Lane is an incapacitated person within the meaning of RCW 4.08.060 and whether or not an RCW Title 11 guardianship proceeding is in her best interests." The attorney states Sharon "may be incapacitated."

In response to Sharon's motion for a temporary order, George submitted police reports and a financial declaration. George stated his annual income was $120,000 and attached copies of current paystubs and tax returns for the previous two years.

On August 16, a family court commissioner entered a temporary order requiring George to pay Sharon $800 a month in maintenance, liquidate an investment account, and transfer the funds to the trust account of Sharon's attorney. The commissioner denied Sharon's request for unsupervised visitation and to terminate the DVPO but directed King County Superior Court Family Court Services to conduct a domestic violence risk assessment.

The commissioner also entered an order appointing Jennifer Gilliam as a GAL. The order states the GAL shall meet with Sharon, review the court file, and "report back to the court whether or not in the GAL's opinion Ms. Lane is 'incapacitated' under the meaning of RCW 4.08.060; and further, to report back to the court whether any Title 11 Guardianship proceeding is appropriate."

RCW 4.08.060 allows the court to appoint a GAL if the litigant is not competent to understand the significance of the legal proceedings. By contrast, the court appoints a guardian under chapter 11.88 RCW only if the court finds the individual is at significant risk of personal harm "based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety." RCW 11.88.010(1)(a). In determining incapacity as to the estate, the court must find there is a significant risk of financial harm "based upon a demonstrated inability to adequately manage property or financial affairs." RCW 11.88.010(1)(b).

The GAL filed a report in September 2013. The report states the GAL does not believe Sharon fully understands the legal proceedings and the potential consequences to her personal and financial well-being. The GAL recommended the court appoint a GAL under RCW 4.08.060 "to protect her best interests."

3

The court scheduled a hearing on the recommendation to appoint a GAL. Sharon opposed appointing a GAL. The court concluded Sharon was "incapacitated within the meaning of RC[W] 4.08.060" and "a litigation GAL should be appointed to protect her best interests." The commissioner appointed Gilliam to act as the litigation GAL (LGAL). The order states the LGAL "shall have the full authority to act on Ms. Lane's behalf and for her best interest with regard to any issues arising under this litigation, to confer with Ms. Lane's counsel about any such issues, and to provide counsel with authorizations needed to effectuate Ms. Lane's best interests."

Trial was scheduled for April 14, 2014. In preparation for the mandatory mediation on April 3, Sharon, her attorney, and the LGAL met to discuss a settlement proposal.

The parties attended the mediation on April 3. Sharon actively participated in the mediation. George and his attorney reached an agreement with the LGAL on the division of property, maintenance, the parenting plan, and child support. Under the terms of the agreement, Sharon would receive 55 percent of the net assets and several pieces of furniture from the family home. George agreed to pay $1,200 a month in spousal maintenance for five years. The DVPO would remain in effect and the parenting plan allowed Sharon weekly supervised visitation. Sharon strongly objected to the terms of the agreement. Neither Sharon nor her attorney consented to or signed the CR 2A Agreement. CR 2A provides:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

4

On April 14, the LGAL filed a motion to determine whether she had the authority to enter into the CR 2A Agreement. The LGAL asked the court to address whether Sharon "has a substantial right to a trial on the issues in dispute that cannot be waived by the LGAL entering into a settlement agreement over [her] objections." If the court ruled the LGAL had the authority to enter into the CR 2A Agreement, the LGAL asked the court to determine "the reasonableness and equitable nature of the settlement agreement."

In response, Sharon argued the LGAL did not have the authority to enter into the CR 2A Agreement over her objections. Sharon opposed entry of the proposed final orders and asked the court to "continue the matter and reschedule a trial date."

At the hearing, Sharon's attorney objected to the CR 2A Agreement and entry of the final orders. The attorney argued the LGAL did not have the authority to waive Sharon's right to a trial. The attorney asserted Sharon had "substantial rights" to proceed to trial and "seek a more equitable property division, more equitable maintenance award, and custody around supervised visitations with [her child]."

The court ruled that because Sharon did not have a "due process right to a trial . . . under these circumstances," the LGAL had the authority to enter into the CR 2A Agreement and "reasonably exercised that authority."

> Here we're in a situation where first, I believe — from the evidence, anyway, I don't think we would — this would drag on for a really, really long time if the Court were to find that Ms. Lane has a due process right to a trial in respective with the position of the litigation guardian ad litem. Which I would suggest has an impact on Mr. Lane's right to due process, as well, to extend this any further.
> Recognizing that this is without specific precedence here in Washington, I think that, under these circumstances, a litigation guardian

5

ad litem has the authority and in this case, has reasonably exercised that authority.

The court's order states Sharon "does not have a substantial right to proceed to trial on all issues in dispute and the LGAL has authority to enter into a settlement agreement." The order also states the "settlement agreement as to financial matters is reasonable, is equitable and is consistent with RCW 26.09.080 and RCW 26.09.090," and "as to the parenting plan is in the best interests of the minor and is consistent with RCW 26.09.187 and RCW 26.09.191." The court entered a decree of dissolution, findings of fact and conclusions of law, a parenting plan, a child support order, and a permanent restraining order.

On appeal, Sharon contends the court erred in ruling she did not have a substantial right to proceed to trial on disputed issues in the dissolution proceeding and the LGAL had the authority to waive her right to trial by entering into the CR 2A Agreement. We agree.

The court can appoint a GAL if reasonably convinced the litigant is not competent to understand or comprehend the significance of the legal proceedings and the effect of such proceedings "in terms of the best interests of such party litigant." Graham v. Graham, 40 Wn.2d 64, 66-67, 240 P.2d 564 (1952).

RCW 4.08.060 provides, in pertinent part:

> When an incapacitated person is a party to an action in the superior courts he or she shall appear by guardian, or if he or she has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act as guardian ad litem.

Where a GAL is appointed under RCW 4.08.060, the GAL "has complete statutory power to represent the interests" of the incapacitated person and the

incapacitated person "can appear in court only by a guardian ad litem or by a regularly appointed guardian." In re Welfare of Dill, 60 Wn.2d 148, 150, 372 P.2d 541 (1962). However, the GAL does not have the authority to waive a substantial right of an incapacitated person. In re Quesnell, 83 Wn.2d 224, 238-39, 517 P.2d 568 (1973).

In In re Welfare of Houts, 7 Wn. App. 476, 481, 499 P.2d 1276 (1972), we held an attorney is "impliedly authorized to enter into stipulations and waivers concerning procedural matters to facilitate the hearing" but has no authority to waive any substantial right of his client. Houts, 7 Wn. App. at 481. "Such waiver, to be binding upon the client, must be specially authorized by" the client. Houts, 7 Wn. App. at 481; see also Wagner v. Peshastin Lumber Co., 149 Wash. 328, 337, 270 P. 1032 (1928); Graves v. P.J. Taggares Co., 94 Wn.2d 298, 303, 616 P.2d 1223 (1980).

In Quesnell, the Washington Supreme Court held the same rule applies to a GAL.

> Of utmost importance, and consistent with the earlier-stated duty of the guardian ad litem to actively protect the rights of his [or her] client, is the prohibition against waiver of such rights. . . . "Even if the appointment is one made after hearing and determination of incompetency, the guardian ad litem is no more permitted to waive a substantial right of the ward than is an attorney for a competent client."

Quesnell, 83 Wn.2d at 238-39 (quoting Houts, 7 Wn. App. at 481). In reaching the conclusion that a GAL cannot waive the substantial rights of an incapacitated person, the court relied on the following rationale described in Graham:

> "There is something fundamental in the matter of a litigant being able to use his [or her] personal judgment and intelligence in connection with a lawsuit affecting him [or her], and in not having a guardian's judgment and intelligence substituted relative to the litigation affecting the alleged incompetent. Furthermore, there is something fundamental in a party litigant being able to employ an attorney of his [or her] voluntary choice to

7

represent him [or her] in court and in being free to reject or accept the advice of such attorney."

Quesnell, 83 Wn.2d at 239 (quoting Graham, 40 Wn.2d at 67-68).

Here, the LGAL had the authority to act on Sharon's behalf and in her best interests with regard to issues in the litigation, and to provide her attorney "with authorizations needed to effectuate [her] best interests." However, there is no dispute the right to trial is a substantial right.[2] Accordingly, we hold the LGAL did not have the authority to enter into the CR 2A Agreement over Sharon's objections and waive her right to a trial on the disputed issues in the dissolution proceeding.

We reverse entry of the decree of dissolution, findings of fact and conclusions of law, the parenting plan, and the child support order, and remand for trial.

Schindler, J.

WE CONCUR:

Leach, J.

Cox, J.

---

[2] At oral argument, the attorney representing George conceded with appropriate candor that the right to trial on disputed issues in a dissolution proceeding is a substantial right.