2015 NOV 23 AM 9: 13

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of: | ) | DIVISION ONE |
| | ) | |
| RICHARD HATFIELD, | ) | No. 73662-1-I |
| | ) | |
| Appellant. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | FILED: November 23, 2015 |

DWYER, J. — Following a bench trial, Richard Hatfield was committed to the custody of the State as a sexually violent predator (SVP). Prior to the commitment trial, Hatfield was found incompetent and a guardian ad litem (GAL), attorney Peter MacDonald, was appointed to represent his interests. On the first day of trial, MacDonald appeared in court for some preliminary matters but left the courtroom prior to opening statements. On appeal, Hatfield contends that the commitment order should be reversed because (1) RCW 4.08.060 mandated MacDonald's physical presence in the courtroom throughout the entirety of the trial, (2) the superior court GAL rules mandate a GAL's presence at trial, (3) due process required that MacDonald be present, (4) Hatfield's counsel provided ineffective assistance by not demanding MacDonald's continued presence throughout the trial, (5) requiring a GAL's presence at all times makes good

policy sense, and 6) Hatfield's confinement violates substantive due process because his underlying mental illness will not be appropriately treated at the Special Commitment Center. Finding no error, we affirm.

I

On February 21, 2012, the State filed a petition seeking the civil commitment of Hatfield as an SVP pursuant to chapter 71.09 RCW. The petition alleged that in April 1982 Hatfield was convicted of attempted lewd and lascivious conduct with a minor under the age of 14 in California, that in April 1998 he was convicted of first degree child molestation, a sexually violent offense, in Clark County, and that he currently "suffers from a mental abnormality and/or personality disorder" that "causes him to have serious difficulty controlling his dangerous behavior and makes him likely to engage in predatory acts of sexual violence unless confined to a secure facility." Based on the petition, the superior court found probable cause to believe Hatfield was an SVP.

On October 10, 2013, the attorneys for the parties appeared by telephone before the trial court and indicated that, since the initiation of the action, concerns had developed regarding Hatfield's mental competency. The parties jointly moved for the appointment of a GAL for Hatfield. A competency hearing was scheduled for the following day.

On October 11, the competency hearing was conducted by telephone. The court heard testimony from two experts, one called by the State and the other by Hatfield. Based on the testimony, the trial court determined that it was "reasonably convinced that Mr. Hatfield is not competent to understand the

significance of legal proceedings and the effect of such proceedings on his best interests." The trial court then appointed attorney Peter MacDonald, pursuant to RCW 4.08.060, to serve as Hatfield's GAL. The order of appointment stated, in pertinent part, that MacDonald "is subject to any and all orders of this Court pertaining to Mr. Hatfield."

On April 7, 2014—the first day of trial—MacDonald appeared before the trial court in order to waive Hatfield's presence. The trial court accepted this waiver. The court then inquired whether MacDonald would be attending trial. After some discussion regarding how the trial court would explain MacDonald's presence to the jury, MacDonald determined that "there's no reason for me to [remain]" during the trial.[1]

At trial, the court heard testimony from three witnesses. The State called one witness, forensic psychologist Dr. Henry Richards, Ph.D. Hatfield called two witnesses, forensic and child psychiatrist Dr. Fabian Saleh, M.D., and forensic psychologist, Dr. Brian Abbott, Ph.D.

Attorneys Christine Sanders and Rachel Forde appeared as counsel for Hatfield and engaged in the questioning of the witnesses.

At the close of all of the evidence, and after hearing closing arguments, the trial court entered findings of fact, conclusions of law, and an order committing Hatfield to the custody of the State as an SVP.

Hatfield now appeals.

---

[1] Both parties assumed that the trial would be by jury. After having determined that, in fact, neither side had filed a jury demand, as is required by RCW 71.09.050(3), the trial court ruled that the case would be tried to the bench.

- 3 -

II

Hatfield contends that "RCW 4.08.060 mandates the presence of a court-appointed GAL at all times during trial." Br. of Appellant at 15. We disagree.

A

Hatfield's contention that RCW 4.08.060 mandated MacDonald's physical presence at trial relies on the improper assumption that the word "appear," as it is used in the statute, *necessarily* means physical presence.

"The meaning of a statute is a question of law reviewed de novo." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "Our primary duty in interpreting a statute is to discern and implement legislative intent." Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011) (citing Campbell & Gwinn, 146 Wn.2d at 9). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. "[U]nder the 'plain meaning' rule, examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found, is appropriate as part of the determination whether a plain meaning can be ascertained." Campbell & Gwinn, 146 Wn.2d at 10.

"Further, a court must not add words where the legislature has chosen not to include them. A court also must construe statutes such that all of the language is given effect, and 'no portion [is] rendered meaningless or superfluous.'" Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d

No. 73662-1-I/5

598 (2003) (alteration in original) (internal quotation marks omitted) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Campbell & Gwinn, 146 Wn.2d at 12.

RCW 4.08.060 provides, in relevant part:

> When an incapacitated person is a party to an action in the superior courts he or she shall *appear by* guardian, or if he or she has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act as guardian ad litem.

(Emphasis added.)

Hatfield's contention that MacDonald's presence throughout the trial was mandated by the statute assumes that the word "appear" *necessarily* means physical presence. However, this narrow definition ignores that the word has more than one meaning, as evidenced by its ordinary dictionary and legal definitions. Because "appear" is the verb form of "appearance," a discussion of both words is instructive.[2]

---

[2] Our analysis requires us to consider the meaning of several definitions. The lexicographic notes to Webster's Third New International Dictionary sets forth the manner in which we should consider these definitions, providing:

> The system of separating by numbers and letters reflects something of the semantic relationship between various senses of a word. It is only a lexical convenience. It does not evaluate senses or establish an enduring hierarchy of importance among them. The best sense is the one that most aptly fits the context of an actual genuine utterance.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 17(a) (note 12.4) (2002). We have previously recognized the significance of this lexicographic note. See State v. Rodriquez, 187 Wn. App. 922, 933, 352 P.3d 200 (2015).

-5-

Webster's Third New International Dictionary provides, in pertinent part, that the words "appear" and "appearance" mean:

> appear . . . **2:** to come formally before an authoritative body <I~ed before the committee in executive session . . .>; *specif.* to present oneself formally as plaintiff, defendant, or counsel <was instructed to ~ in court the next morning>
>
> appearance . . . **d:** the act or action of coming formally before an authoritative body <his ~before the board> e (1): the coming into court of either of the parties to a suit (2): the coming into court of a party summoned in an action or his attorney (3): the act or proceeding by which a party proceeded against places himself before the court and submits to its jurisdiction (as by making the proper entry in the court records and remaining within reach of its process)

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 103 (2002).

In these definitions, Webster's sets forth how the verb "appear" and the related noun "appearance" are used in common parlance. The dictionary defines the word "appear" as "to come formally before an authoritative body." As illustrative examples of how a person appears in this manner, the dictionary specifies that one "appear[s]" as "plaintiff, defendant, or counsel." It is apparent from these examples that, in common usage, the focus of the word "appear" is on the role or status that a person assumes when he or she "comes formally before an authoritative body" as a plaintiff, defendant, or counsel—not on whether a person is or is not physically present in a courtroom.

Because a noun and verb are related forms of a word, it is not surprising that an examination of the noun "appearance" yields a similar interpretation. The dictionary defines "appearance" as "the act or action of coming formally before an authoritative body." In another definition of the word, Webster's sets forth

illustrative examples of how a person makes such an "appearance" by enumerating three instances: as a party to the suit, through his or her attorney, or by submitting to the jurisdiction of the court. It is apparent from these examples that, as with its verb counterpart, the focus of the noun "appearance" is also on the role or status that a person assumes when the he or she comes "formally before an authoritative body" as a party, through an attorney, or by submitting to the jurisdiction of the court—not on whether or not the person is physically present in a courtroom.

Black's Law Dictionary provides, in pertinent part, that the word "appearance" means

> A coming into court as a party or interested person, or as a lawyer on behalf of a party or interested person; esp., a defendant's act of taking part in a lawsuit, whether by formally participating in it or by an answer, demurrer, or motion, or by taking postjudgment steps in the lawsuit in either the trial court or an appellate court.

BLACK'S LAW DICTIONARY 118 (10th ed. 2014).

Black's Law Dictionary sets forth how the word "appearance" is used in legal parlance. The legal dictionary defines the word "appearance" as "[a] coming into court as a party or interested person, or as a lawyer on behalf of a party or interested person." This definition provides that a person can make such an "appearance" personally, as a party or interested person, or through a representative, such as a lawyer, who appears "*on behalf of* a party or interested person." (Emphasis added.) In this regard, remaining consistent with the common usage definitions, the legal definition also focuses on "appearing" as

- 7 -

signifying that a person assumes a formal role in litigation—not on whether an individual is or is not physically present in a courtroom.

A survey of relevant case law, applying the word "appear" in the context of RCW 4.08.060, supports this view. In particular, Rupe v. Robison, 139 Wash. 592, 247 P. 954 (1926), In re Guardianship of Miller, 26 Wn.2d 202, 173 P.2d 538 (1946), and Shelley v. Elfstrom, 13 Wn. App. 887, 538 P.2d 149 (1975), are instructive.

In Rupe, the court held that a husband could maintain a divorce action against his insane wife, even though the wife was mentally incompetent and the husband served as her general guardian, so long as the court appointed a guardian ad litem to represent the wife's interests. 139 Wash. at 597. The court's analysis made clear that the purpose of appointing a guardian ad litem was *not* to have someone physically present in a courtroom but, rather, was to protect the interests of the incompetent party. As the court noted:

> [T]he court has appointed a guardian *ad litem* for the purpose of the protection of the ward's interests. A guardian *ad litem* has full and compete power to represent the ward in all those things necessary to the prosecution or defense of a suit in which the ward is interested.

Rupe, 139 Wash. at 595.

The key, the Rupe court reiterated, was that "a guardian *ad litem* [was] appointed to represent her interests. The insane wife, having been represented upon the trial of this action by a guardian *ad litem* appointed for the express purpose of contesting the proceedings" had her interests protected. 139 Wash. at 597. The Rupe court's focus was on the fact that the GAL existed to represent

the incompetent's interests—not on whether the GAL was physically present at one location or another.

In Miller, the court reiterated the reasoning set forth in Rupe when addressing whether a mentally incompetent wife "was properly represented at the divorce hearing." 26 Wn.2d at 206. In answering this question in the affirmative, the court focused on the fact that a guardian had been appointed and "her interests protected." Miller, 26 Wn.2d at 207.

More recently, in Shelley, we held that it was "the duty of the [trial] court to determine either that [the party] was competent or that a guardian ad litem was required." 13 Wn. App. at 889. In so holding, we noted that the "Superior Court is obligated to afford an alleged incompetent person the opportunity to defend against the allegation" in a lawsuit. Shelley, 13 Wn. App. at 889. This is done by appointing a guardian ad litem to represent the incompetent party's interest. Shelley, 13 Wn. App. at 889. In this way, "'he [or she] shall appear by guardian.'" Shelley, 13 Wn. App. at 889 (quoting RCW 4.08.060).

When the word "appear" is considered in light of its ordinary and legal definitions, together with the reasoning of Rupe, Miller, and Shelley, it is apparent that the "best sense" of the word "appear" and the sense that "most aptly fits the context" of construing a statute dealing with incompetent persons involved in litigation is that "appear" references how the incompetent person is presented to the court and becomes subject to its authority. RCW 4.08.060's dictate that an incompetent person "appear[s] by" the appointed GAL refers to the GAL's representation of the incompetent's interests by acting as the party to the

litigation (as opposed to a lawyer who represents the incompetent's interests by acting as an attorney). In this regard, the word "appear" in RCW 4.08.060 addresses how an incompetent person becomes a party in litigation ("appear by") *not* whether a particular person must be physically present during court proceedings.

B

Notwithstanding the clarity of the foregoing analysis, Hatfield contends that case law mandates a contrary result. Again, we disagree.

Hatfield first cites to In re Detention of Ransleben, 135 Wn. App. 535, 144 P.3d 397 (2006), to support his contention that the statutory "appear by" language mandates a GAL's physical presence in a courtroom at all times during a proceeding. In that case, Ransleben appealed from an order committing him as an SVP, asserting that "the trial court erred in committing him under chapter 71.09 RCW because he has an unremitting mental disorder rendering him eligible for involuntary commitment under chapter 71.05." Ransleben, 135 Wn. App. at 536. The court held that Ransleben did not have the right to be mentally competent when subjected to an SVP trial. In so holding, the court observed that the appointment of a GAL sufficiently safeguarded Ransleben's interests. See Ransleben, 135 Wn. App. at 539-40. Contrary to Hatfield's present intimation, the focus of this decision was on whether Ransleben's interests were properly protected by a GAL, not on whether the GAL was physically present at trial. Indeed, while the GAL in Ransleben *was* required to be physically present at trial, that was because the judge specifically so ordered—not because the statute was

believed to require it.[3] Nothing about this decision supports Hatfield's claim of error.

Hatfield next relies upon In re Welfare of Dill, 60 Wn.2d 148, 150, 372 P.2d 541 (1962), repeatedly citing the following proposition: "[t]he statutory mandate is not satisfied when the person under legal disability is represented by an attorney." While this is no doubt true, the quoted statement does not advance Hatfield's contention, given that no GAL was appointed in that case.

Dill concerned the appeal of a mentally ill mother whose parental rights had been terminated. At the termination hearing, "[the mother] was not represented by a regularly appointed guardian or a guardian ad litem." Dill, 60 Wn.2d at 150. In holding that the mother could not be deprived of her parental rights without the appointment of a guardian ad litem or a regularly appointed guardian, the court noted that "[a] person under such legal disability can appear in court only by a guardian ad litem or by a regularly appointed guardian. A guardian ad litem has complete statutory power to represent the interests of the ward." Dill, 60 Wn.2d at 150. Thus, the key in Dill was not, as Hatfield suggests, that a GAL was not physically present in court. The key was that no GAL had been appointed to represent the incompetent's interests.[4]

---

[3] Here, Hatfield's GAL was "subject to further orders" of the court. The trial judge was aware that the GAL intended to leave the courtroom and did not order him to stay.

[4] Similarly, Hatfield's reliance on Flaherty v. Flaherty, 50 Wn.2d 393, 312 P.2d 205 (1957), is misplaced. In that case, no GAL was appointed to represent the interests of the incompetent wife. This mandated reversal. The Flaherty opinion in no way speaks to whether an appointed GAL needs to be physically present in the courtroom at all times during a proceeding.

Thus, in both Ransleben and Dill the result turned on whether an incompetent individual's interests had been protected by the appointment of a GAL. Neither case concerned whether an appointed GAL needed to be physically present at all stages of a proceeding. In fact, Ransleben and Dill are consistent with the view—also supported by Rupe, Miller, and Shelley—that the words "appear by guardian" in RCW 4.08.060 refer to how an incompetent person becomes a party to litigation—by having a GAL safeguard the incompetent's interests in the litigation. The words do not refer to physical presence.

## C

Hatfield's best argument is that this court's recent decision in In re Dependency of P.H.V.S., 186 Wn. App. 167, 339 P.3d 225 (2014), supports his contention that MacDonald's physical presence was required at all stages of the trial. At first glance, the language of the holding in that case appears to require just that. However, a close reading of that decision confirms that the court's holding was grounded in the language of a court rule, GALR 2(I), applicable in that case but inapplicable herein, rather than the language of RCW 4.08.060.

P.H.V.S.'s father was represented by a court-appointed GAL at a dependency fact-finding hearing. Prior to the third day of the hearing, the GAL sent the court an e-mail stating that he did not plan to attend the morning session of the hearing and asking the court to proceed without him. P.H.V.S., 186 Wn. App. at 175. The question presented was whether the absence of the GAL

- 12 -

during a portion of the dependency fact-finding hearing violated either RCW 4.08.060 or the GALR. P.H.V.S., 186 Wn. App. at 169.

In answering this question, the decision quotes both RCW 4.08.060 and GALR 2(l), which provide as follows:

> When an incapacitated person is a party to an action in the superior courts he or she shall *appear by* guardian, or if he or she has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act as guardian ad litem.

RCW 4.08.060 (emphasis added).

> [The GAL] shall *appear at* any hearing for which the duties of a guardian ad litem or any issues substantially within a guardian ad litem's duties and scope of appointment are to be addressed.

GALR 2(l) (emphasis added).

This court held that "the absence of [the] GAL during a morning session of the four-day dependency fact-finding hearing violated the mandatory statutory and GALR requirements." P.H.V.S., 186 Wn. App. at 169-70. However, the court ultimately found there to be no due process violation and denied relief because the GAL's absence resulted in "little or no risk of error." P.H.V.S., 186 Wn. App. at 170.

The court's statement, that the GAL's absence "violated the mandatory statutory and GALR requirements" was literally true (given that one provision required physical presence, it was true that the combination of the two provisions had the same effect) but was stated imprecisely. The court did not distinguish between the phrases "appear by" in RCW 4.08.060 and "appear at" in GALR 2(l). Instead of declaring that the latter provision expressly requires physical presence

("appear at any hearing"), while the former does not, the court referred to the two provisions collectively while articulating a rule that is only required by one of them. Thus, the quoted statement was ill-advised. The P.H.V.S. holding is accurately understood as being required by the plain language of GALR 2(I) ("appear at any hearing"). Because the GALR do not apply to sex predator proceedings,[5] however, the holding of P.H.V.S. does not advance Hatfield's appellate contention.

## D

The record herein indicates that MacDonald appeared on Hatfield's behalf, pursuant to RCW 4.08.060, in a manner consistent with his statutory obligations and the order of the court. No party disputes that, on April 7, MacDonald physically appeared before the trial judge in order to waive Hatfield's presence at trial. Indeed, he remained in the courtroom, on Hatfield's behalf, in order to safeguard Hatfield's interests until he had discussed the matter of his continued presence with the court. The statute does not, by using the words "appear by," impose an obligation to physically remain in the courtroom for the entirety of a trial. Rather, it imposes an obligation to properly safeguard the interests of the incompetent party—which may often (but not always) involve the GAL's physical presence at a hearing or trial. MacDonald properly discharged his obligations.

## III

Next, even though Hatfield concedes that the GALR do not apply to proceedings of this type, he urges us to nevertheless look to those rules to divine

---

[5] See infra section III.

persuasive guidance regarding the obligations imposed by RCW 4.08.060. We decline to do so.

The GALR have an established "[p]urpose and [s]cope":

> to establish a minimum set of standards applicable to all superior court cases where the court appoints a guardian ad litem or any person to represent the best interest of a child, an alleged incapacitated person, or an adjudicated incapacitated person pursuant to Title 11, 13 or 26 RCW.
>
> These rules shall also apply to guardians ad litem appointed pursuant to RCW 4.08.050 and RCW 4.08.060, if the appointment is under the procedures of Titles 11, 13 or 26 RCW.
>
> These rules shall not be applicable to guardians ad litem appointed pursuant to Special Proceedings Rule (SPR) 98.16W and chapter 11.96A RCW.

GALR 1(a).

GALR 1(a) clearly enumerates the type of appointments to which the rules apply. The text of GALR 1(a) indicates that when GAL's are appointed pursuant to RCW 4.08.060 the rules apply only if the underlying litigation is brought under Titles 11, 13, or 26 RCW. The action against Hatfield was brought pursuant to chapter 71.09 RCW. Therefore, the rules do not apply.

We will not ignore this limitation. While it is so that GALR 2(I) explicitly sets forth that a GAL must "appear at any hearing," it is also so that there would be no need to set forth this requirement in a court rule if the guardian ad litem statute already required this. Thus, contrary to Hatfield's assertion, the existence of this requirement in the court rule militates *against* his position, not in favor of it.

IV

Next, Hatfield contends that "[t]he GAL's absence from all portions of the

- 15 -

trial during which substantive evidence was presented undermined the overall fairness of the proceedings," in violation of his procedural due process rights. Br. of Appellant at 20. This is so, he asserts, because "[w]hen an incompetent party is deprived of the assistance of a court-appointed GAL, he or she is stripped of an important procedural protection intended to ensure the fundamental fairness of the proceeding." Br. of Appellant at 20. Thus, Hatfield avers, he was denied due process. We disagree.

"Constitutional challenges are questions of law subject to de novo review." Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 215, 143 P.3d 571 (2006).

"The United States Constitution guarantees that federal and state governments will not deprive an individual of 'life, liberty, or property, without due process of law.'" Amunrud, 158 Wn.2d at 216 (quoting U.S. CONST. amends. V, XIV). "It is well settled that civil commitment is a significant deprivation of liberty, and thus individuals facing SVP commitment are entitled to due process of law." In re Det. of Morgan, 180 Wn.2d 312, 320, 330 P.3d 774 (2014) (citing In re Det. of Stout, 159 Wn.2d 357, 369, 150 P.3d 86 (2007)).

"The due process clause of the Fourteenth Amendment confers both procedural and substantive protections." Amunrud, 158 Wn.2d at 216. The type of protection afforded to individuals pursuant to the due process clause is "'[i]n the traditional sense . . . protection against state action.'" Garvey v. Seattle Tennis Club, 60 Wn. App. 930, 935, 808 P.2d 1155 (1991) (quoting Hartung v. Audubon Country Club, Inc., 785 S.W.2d 501, 503 n.1 (Ky. Ct. App. 1990)); see State v. Beaver, ___ Wn.2d ___, 358 P.3d 385, 393 (2015).

"Procedural due process requires notice and an opportunity to be heard "'at a meaningful time and in a meaningful manner.'"" Morgan, 180 Wn.2d at 320 (quoting Amunrud, 158 Wn.2d at 216) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). "The process due depends on what is fair in a particular context." Morgan, 180 Wn.2d at 320. In Matthews, the United States Supreme Court articulated a balancing test to aid in determining when, and to what extent, procedural protections are required:

> [D]ue process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

When this three-factor test is applied in the context of SVP civil commitment cases, the first factor often weighs in favor of the individual because a person has "a significant interest in his [or her] physical liberty." Morgan, 180 Wn.2d at 321; accord In re Det. of Black, ___ Wn. App. ___, 357 P.3d 91, 96 (2015). The third factor often weighs in favor of the State because the "'State has a compelling interest both in treating sex predators and protecting society from their actions.'" Morgan, 180 Wn.2d at 322 (quoting In re Pers. Restraint of Young, 122 Wn.2d 1, 26, 857 P.2d 989 (1993)); accord Black, 357 P.3d at 97. Thus, the balance often turns on the second factor. See Morgan, 180 Wn.2d at 321; Black, 357 P.3d at 96-98.

In weighing the second factor, we recognize that

> there are several existing protections within chapter 71.09 RCW. For example, an SVP respondent has the right to a twelve person jury. At trial, the State carries the burden of proof beyond a reasonable doubt and the verdict must be unanimous. Further, at all stages of the proceedings, the respondent has the right to counsel, including appointed counsel. We acknowledge that these statutory safeguards help protect against an erroneous deprivation of liberty.

Black, 357 P.3d at 96 (footnotes omitted).

There are two discrete deficiencies in Hatfield's procedural due process contention. First, a due process claim requires that a state actor deny due process. Hatfield fails to identify the state actor at whom his claim is directed. Second, in failing to acknowledge that a GAL and a lawyer serve different functions, Hatfield does not demonstrate that MacDonald's absence from the trial in any way compromised the fairness of the proceeding.

Initially, Hatfield fails to identify the state actor at whom his constitutional claim is directed. If he is claiming that the state actor is the legislature, his claim fails because the legislature passed a statute, RCW 4.08.060, providing that a guardian ad litem be appointed to safeguard the interests of incompetent SVP litigants. If he is claiming that the state actor is the GAL, his claim fails because he cites no authority for the proposition that a GAL is an agent of the state. If he is claiming that the state actor is the trial judge, his claim fails because the judge duly appointed a GAL for Hatfield.

But Hatfield's due process argument also suffers from another significant deficiency: it fails on the second Matthews factor. Hatfield does not acknowledge

that a lawyer and a GAL serve different functions. Consequently, he does not demonstrate that MacDonald's absence from the trial compromised the fairness of the proceeding or created any risk of an erroneous outcome.

"Generally, the client decides the goals of litigation and whether to exercise some specific constitutional rights, and the attorney determines the means." State v. Cross, 156 Wn.2d 580, 606, 132 P.3d 80 (2006).[6] Indeed, "Washington law . . . affords trial counsel great leeway." In re Pers. Restraint of Stenson, 142 Wn.2d 710, 734, 16 P.3d 1 (2001). "For many reasons . . . the choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment." State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). The array of trial tactics and strategy available to the attorney as a means of achieving the client's goals is considerable, including decisions as to who to call as and how to question a witness. Stenson, 142 Wn.2d at 735 (quoting Piche, 71 Wn.2d at 590).

Upon appointment, a GAL stands in the shoes of the client, having "complete statutory power to represent the interests of the ward." Dill, 60 Wn.2d at 150 (citing Rupe, 139 Wash. at 595). Thus, the GAL can articulate to the attorneys the incompetent's goals for the litigation but cannot dictate the tactics or strategy to be employed at trial. The GAL's control over the lawyers' conduct

---

[6] Citing to RPC 1.2(a), which states that "a lawyer shall abide by a client's decisions concerning the objectives of representation . . . . whether to settle a matter. . . . [and] shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

is limited to the extent that a GAL can only act in instances in which the client could act.

Two recent cases illustrate the limits of the role of a guardian ad litem when acting in the stead of an incompetent person. In In re Marriage of Lane, 188 Wn. App. 597, 598, 354 P.3d 27 (2015), we addressed whether a GAL could enter into a CR 2A agreement and waive an incapacitated person's right to a trial over the person's stated objection. We held that "[b]ecause the right to trial is a substantial right, the [GAL] did not have the authority" to enter into the agreement over the ward's objection. Lane, 188 Wn. App. at 598. Even more recently, we addressed whether an SVP litigant was "deprived of due process in [his] civil commitment case where portions of the jury selection proceeded in his absence." Black, 357 P.3d at 92. In holding that there was a due process violation, we reasoned that because jury selection was a phase of the proceeding wherein the client could have overruled the decision of his lawyer, it was necessary for the client to be present.[7] Black, 357 P.3d at 97.

Hatfield's trial presents an entirely different scenario. His trial consisted solely of counsels' opening and closing arguments and the questioning of three witnesses. The determination of who to call as a witness and how to question a witness is solely within the purview of the lawyer, not the client. The same is true of the presentation of opening and closing arguments to the court in a bench trial.

---

[7] A defendant in a criminal case, and thus a respondent in an SVP case, has the right to "'give advice or suggestion or even to supersede his lawyers altogether' about the composition of the jury." Black, 357 P.3d at 96 (internal quotation marks omitted) (quoting State v. Irby, 170 Wn.2d 874, 883, 246 P.3d 796 (2011)).

Thus, unlike the individuals in Black and Lane, who could have overruled the decisions of their lawyer or GAL, respectively, Hatfield could not have overruled any of the decisions his lawyers made at trial. Because Hatfield could not have overruled these decisions, neither could have MacDonald. Thus, in this regard, Hatfield fails to demonstrate that MacDonald's presence would have altered the proceedings in any way.

Furthermore, because we presume that Hatfield's two lawyers were competent, State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995), we assume that they discussed the case with MacDonald prior to the commencement of trial. Hatfield has not shown to the contrary. In addition, Hatfield's case was heard as a bench trial. There is no indication that, had MacDonald remained in the courtroom for the entire proceeding, the judge would have ruled differently in any way. In fact, the trial judge was capable of ordering MacDonald to remain, but chose not to do so. On this record, Hatfield does not show a risk of erroneous deprivation of his liberty interest as necessitated by the second factor of the Matthews test. His procedural due process claim fails.

V

Next, Hatfield contends that he was "denied his right to effective assistance of counsel when his attorneys failed to object to the GAL's absence." Br. of Appellant at 25. This is so, he asserts, because "[n]o reasonable attorney could agree to the absence of a court-appointed GAL, . . . . [n]or could any legitimate strategy explain the failure to object to proceeding in the GAL's absence." Br. of Appellant at 26-27. Further, he asserts, "[t]his is particularly

- 21 -

true in this case where the GAL was an attorney with significant experience in chapter 71.09 RCW cases." Br. of Appellant at 27. Hatfield does not demonstrate an entitlement to appellate relief on this claim.

Persons subject to commitment under chapter 71.09 RCW have the right to counsel. RCW 71.09.050(1). The "right to counsel is meaningless unless it includes the right to effective counsel." Ransleben, 135 Wn. App. at 540.

"In order to succeed in [an ineffective assistance of counsel] claim, the defendant must show both that the attorney's performance was deficient and that the defendant was prejudiced by that deficient performance." State v. Borsheim, 140 Wn. App. 357, 376, 165 P.3d 417 (2007) (citing Strickland v. Washington, 466 U.S. 668, 688-93, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). "Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different." Weaville, 162 Wn. App. at 823 (citing McFarland, 127 Wn.2d at 335).

The burden is on the individual alleging ineffective assistance of counsel to demonstrate deficient representation and prejudice. McFarland, 127 Wn.2d at 335, 337. "Courts engage in a strong presumption [that] counsel's representation was effective." McFarland, 127 Wn.2d at 335 (citing State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995)). "This presumption can be rebutted if the defendant proves that his attorney's representation 'was unreasonable under prevailing professional norms.'" Weaville, 162 Wn. App. at 823 (internal

quotation marks omitted) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004)). "The reasonableness of counsel's performance is to be evaluated in light of all the circumstances." Weaville, 162 Wn. App. at 823 (citing Davis, 152 Wn.2d at 673). Indeed, "[c]ompetency of counsel is determined based upon the entire record below." McFarland, 127 Wn.2d at 335 (citing State v. White, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972)).

"Scrutiny of counsel's trial tactics is deferential, and if they can be characterized as legitimate, then such tactics cannot serve as the basis for an ineffective assistance claim." State v. Bander, 150 Wn. App. 690, 720, 208 P.3d 1242 (2009). In this regard, the presumption of adequate representation is not overcome if there is any "conceivable legitimate tactic" that can explain counsel's performance. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

At the outset, Hatfield provides no authority for the assertion that his attorneys had a duty to object to MacDonald's absence. Moreover, a review of the record indicates that Hatfield is unable to demonstrate either deficient performance or prejudice as a result of his attorneys not objecting to MacDonald's absence at trial.

In addressing the deficiency prong of the Strickland test, the record shows that both of Hatfield's attorneys were present and participated in the questioning of witnesses. In essence, this meant that MacDonald had no role to play in the trial because the questioning or calling of witnesses was solely within the attorneys' purview and both attorneys were present to take notes, question witnesses, and listen to testimony. In addition, it is a conceivable tactic to

assume, based on MacDonald's experience, that MacDonald and Hatfield's attorneys discussed the case prior to the start of trial and determined that his presence was not necessary. In fact, Hatfield's attorneys, MacDonald, and the trial judge were all present at the time that the judge determined that MacDonald could leave. No one seemed at all surprised by the judge's decision.[8] Moreover, three experienced attorneys were present at the time this decision was made— MacDonald, Sanders, and Forde. This militates *against* Hatfield's assertion that no reasonable attorney would agree to MacDonald's absence. On this record, Hatfield fails to overcome the presumption of competence in his attempt to demonstrate that his attorneys' conduct fell below the prevailing professional standard of reasonableness simply because they did not object to MacDonald's absence during trial.

Turning to the prejudice prong of the Strickland inquiry, the record shows that this trial was to the bench and it was the decision of this trial judge to appoint MacDonald to serve as GAL for Hatfield. The judge could have required that MacDonald be physically present for the entire trial, but did not. Moreover, this trial consisted of the questioning of three witnesses. Two of the three witnesses were Hatfield's own witnesses. Given that depositions of all three witnesses were given prior to trial, Hatfield's GAL and each of his lawyers knew the substance of each witness's testimony prior to trial commencing. Hatfield does not demonstrate how MacDonald's presence at trial would have altered the

---

[8] "THE COURT: Oh, I'm not telling you to stay. I'm just trying to find out whether you are going to stay."

questioning of any witness. On this record, because Hatfield fails to demonstrate that the trial would have proceeded any differently had MacDonald been physically present, there is no indication of any prejudice arising from the GAL's absence. Hatfield's claim of ineffective assistance of counsel fails.[9]

VI

Finally, Hatfield contends that his commitment under chapter 71.09 RCW violates substantive due process because it does not provide him a realistic opportunity for improvement. This is so, he asserts, because he "is not capable of participating in sex offender treatment until he receives adequate treatment for his psychotic condition." Br. of Appellant at 31. Further, he asserts that the facility to which he will be committed is "unequipped to give [him] the adequate medical attention he needs to treat his condition." Br. of Appellant at 35. His contentions are unavailing.

The State correctly cites to In re Detention of Turay, 139 Wn.2d 379, 986 P.2d 790 (1999), for the proposition that the type of treatment available to Hatfield, the conditions of his confinement, and his ability to be successfully treated or cured are matters beyond the scope of a sex predator trial. As the Supreme Court announced therein, the purpose of an SVP trial "is to determine

---

[9] Hatfield also contends that requiring the GAL's physical presence at all times during trial makes good policy sense. Because we will not disturb legislative policy determinations, his assertion is properly one for the legislature to consider, not one for us to consider.

whether the defendant constitutes an SVP; *it is not* to evaluate the potential conditions of confinement." Turay, 139 Wn.2d at 404.[10]

The Turay decision was consistent with In re Detention of McClatchey, 133 Wn.2d 1, 2, 940 P.2d 646 (1997), in which it was held that a challenge to an SVP commitment petition premised upon predicted conditions of confinement was "premature." In so holding, the court reasoned that "unless and until [McClatchey] is found to be a sexually violent predator and committed under the provisions of RCW 71.09, the constitutionality of the statute as applied to the facts of his case cannot be determined." McClatchey, 133 Wn.2d at 5. The combined force of the Turay and McClatchey decisions forecloses Hatfield's present claim.[11]

Affirmed.

We concur:

_____

_____

_____

---

[10] The Supreme Court noted that a person actually subjected to illegal conditions of confinement may have an alternate remedy of "an injunction action and/or an award of damages" in a separate lawsuit. Turay, 139 Wn.2d at 420.

[11] During oral argument in this court, counsel for Hatfield contended that the recent decision in Detention of D.W. v. Department of Social and Health Services, 181 Wn.2d 201, 332 P.3d 423 (2014), in essence overruled Turay and McClatchey. The D.W. decision does not mention Turay or McClatchey. Our Supreme Court does not overrule precedent sub silentio. Krawiec v. Red Dot Corp., 189 Wn. App. 234, 354 P.3d 854, 856 (2015); Lunsford v. Saberhagen Holdings, Inc., 166 Wn.2d 264, 280, 208 P.3d 1092 (2009); State v. Studd, 137 Wn.2d 533, 548, 973 P.2d 1049 (1999).

Because "[w]e are not free to ignore controlling Supreme Court authority," Matia Contractors, Inc. v. City of Bellingham, 144 Wn. App. 445, 452, 183 P.3d 1082 (2008), the reasoning set forth in Turay controls the resolution of Hatfield's substantive due process claim.