

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 0 2 2018

Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8 a.m. on Aug 2, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of Mark A. Black. | ) ) ) | No. 94494-6 |
| STATE OF WASHINGTON, | ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| MARK A. BLACK, | ) ) | |
| Petitioner. | ) ) | Filed: AUG 0 2 2018 |

YU, J.— To commit an individual as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW, the State must prove beyond a reasonable doubt that the individual "has been convicted of or charged with a crime of sexual violence and [he or she] suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). This case concerns the admissibility of expert testimony about whether the subject individual suffers from a mental abnormality.

The trial court held a *Frye*[1] hearing and excluded expert testimony regarding "hebephilia" on the basis that such a diagnosis is not generally accepted by the relevant scientific community. The parties do not challenge that portion of the court's decision. However, petitioner Mark Black argues that the court committed reversible error by allowing expert testimony on a diagnosis of "paraphilia not otherwise specified (NOS), persistent sexual interest in pubescent aged females, non-exclusive."

The Court of Appeals affirmed Black's civil commitment in an unpublished opinion. *In re Det. of Black*, No. 71292-6-I, slip op. at 10 (Wash. Ct. App. Mar. 27, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/712926.pdf, *review granted*, 189 Wn.2d 1015, 404 P.3d 480 (Wash. Oct. 5, 2017). It concluded that regardless of whether paraphilia NOS was improperly admitted, there was sufficient evidence to find Black had a mental abnormality and a personality disorder based on two other diagnoses that Black did not challenge on appeal. *Id.* We affirm the Court of Appeals on different grounds and hold that the trial court did not err as a matter of law when it admitted expert testimony on paraphilia NOS, nor did it abuse its discretion when it allowed an expert to describe Black's specific paraphilic focus as "persistent sexual interest in pubescent aged females."

---

[1] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

2

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the State filed a petition to civilly commit 40-year-old Mark Black as an SVP prior to his scheduled release from prison. In support of its petition, the State included the evaluation of Dr. Dale Arnold, who diagnosed Black with sexual sadism; paraphilia NOS, persistent sexual interest in pubescent aged females, nonexclusive; and personality disorder NOS with antisocial and narcissistic characteristics.

Prior to trial, Black moved to exclude evidence of hebephilia and paraphilia NOS, persistent sexual interest in pubescent aged females, arguing that hebephilia is inadmissible pursuant to *Frye*. Black was not diagnosed with hebephilia, but he argued that Dr. Arnold's paraphilia NOS diagnosis was just another name for hebephilia and was therefore also inadmissible. According to testimony at the *Frye* hearing by Black's expert, Dr. Karen Franklin, hebephilia "[i]n general . . . has something to do with sexual attraction or sexual activity or both with . . . adolescents." Report of Proceedings (RP) (Sept. 13, 2013) at 35. Dr. Franklin testified that "[t]here's nothing abnormal or pathological about a certain level of attraction" between an adult and an adolescent. *Id.* at 93.

The trial court excluded evidence of hebephilia from being presented at trial because it "is not favored in the relevant scientific community." *Id.* at 149. However, the trial court allowed expert testimony from Dr. Arnold on the basis

3

that paraphilia NOS is generally accepted in the psychological community and that

Dr. Arnold used commonly accepted methodology to diagnose Black.

At trial, the jury was instructed that to determine Black is an SVP it must

find that the State proved the following elements beyond a reasonable doubt:

> (1)    That Mr. Black has been convicted of a crime of sexual violence;

> (2)    That Mr. Black suffers from a mental abnormality or personality disorder which causes serious difficulty in controlling his sexually violent behavior; and

> (3)    That this mental abnormality or personality disorder makes Mr. Black likely to engage in predatory acts of sexual violence unless confined to a secure facility.

Clerk's Papers (CP) at 1385. The jury was further instructed that its verdict needed

to be unanimous, but that it "need not be unanimous as to whether a mental

abnormality or personality disorder has been proven beyond a reasonable doubt so

long as each juror finds that at least one of these alternative means has been proved

beyond a reasonable doubt." *Id.*

Dr. Arnold testified that each element was satisfied in Black's case. First, he

testified that Black had been convicted of two counts of child molestation in the

second degree and one count of attempted child molestation in the second degree,

which are all crimes of sexual violence.[2]

---

[2] The jury heard testimony about these incidents. Black's former stepdaughter testified that he had sexual intercourse with her when she was 13. 4 Verbatim Report of Proceedings

Second, Dr. Arnold testified that Black suffers from two mental abnormalities (sexual sadism and paraphilia NOS, persistent sexual attraction to pubescent aged females, nonexclusive) and a personality disorder (personality disorder NOS), each of which independently causes him serious difficulty controlling his sexually violent behavior. Third, Dr. Arnold concluded that in his opinion, Black "is more likely than not to engage in predatory acts of sexual violence if not confined." 5 Verbatim Report of Proceedings (VRP) (Oct. 28, 2013) at 480.

Black presented his own expert witness, Dr. Joseph Plaud, who testified that Black does not suffer from a mental abnormality or personality disorder at this time. Dr. Plaud further testified that the paraphilia NOS diagnosis was inappropriate because "it doesn't represent fundamentally disordered sexual arousal. Men are attracted to pubescence." 9 VRP (Nov. 4, 2013) at 946. When asked whether an adult male's attraction to a pubescent aged female could ever be deviant, he testified that it might be illegal but "it doesn't happen as a result of underlying sexual deviance." *Id.* at 947.

The jury unanimously determined Black met the criteria for an SVP, and the court ordered his civil commitment.

---

(VRP) (Oct. 24, 2013) at 220-22. The friend of a former girlfriend's daughter testified that when she was 12, he fondled her breasts and rubbed his crotch against hers. 8 VRP (Oct. 31, 2013) at 859-60.

ISSUE

Whether expert testimony on paraphilia NOS, persistent sexual interest in pubescent aged females was improperly admitted at trial?

ANALYSIS

This case does *not* ask us to determine whether evidence of hebephilia can be offered as evidence of a mental abnormality in accordance with *Frye*. The trial court excluded any evidence of hebephilia following a *Frye* hearing, and the State has not appealed that decision. Instead, we consider whether the trial court improperly admitted expert testimony on paraphilia NOS, persistent sexual interest in pubescent aged females as evidence of Black's mental abnormality.

Our review of the trial court's *Frye* determination regarding paraphilia NOS is de novo. *In re Det. of Halgren*, 156 Wn.2d 795, 802-03, 132 P.3d 714 (2006). Our review of the scope of testimony that the trial court actually allowed is for an abuse of discretion. *Id.* at 802.

A.    Black's paraphilia NOS diagnosis

Paraphilic disorders are characterized by

recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months . . . [and] cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

6

AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-IV-TR 566 (4th rev. ed. 2000). Both the former DSM-IV-TR and the current American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) (DSM-5) emphasize that paraphilic sexual urges are *not* considered a disorder unless they are also persistent over an extended period of time and cause significant distress or impairment. DSM-IV-TR at 568; DSM-5 at 686.[3]

While certain paraphilic disorders, such as voyeurism and fetishism, are specifically enumerated, others, such as necrophilia and zoophilia, are not. Paraphilia NOS is a diagnosis reserved for those individuals whose paraphilic focus does not fall within the descriptions of any of the eight enumerated paraphilias. It is followed by a description of the individual's paraphilia, which, as defined in the DSM-5, is "any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners." DSM-5 at 685. The DSM-5 also allows for a diagnosis of unspecified paraphilic disorder, where the clinician cannot or does not wish to specifically identify the individual's paraphilic focus. *Id.* at 705.

---

[3] Although Dr. Arnold diagnosed Black in accordance with the DSM-IV-TR, he testified at trial that his three diagnoses would be unchanged using the DSM-5. 5 VRP (Oct. 28, 2013) at 384.

7

Dr. Arnold diagnosed Black with paraphilia NOS and described his paraphilic focus as pubescent aged females. He reached this conclusion after reviewing approximately 4,000 pages of records, administering a psychological test to Black, and interviewing him in 2008 and 2011. He described in his evaluation that Black "enjoyed 'grooming' young girls because he found the attention from them exciting." CP at 407. He was sexually aroused by their budding breasts and also emotionally attracted to them because they were easy to manipulate.

What makes Black's interest rise to the level of paraphilic disorder, thus evincing a mental abnormality, is not specifically his sexual focus on pubescent girls, but that he has demonstrated an inability to control his behavior to such an extent that he has committed repeated sexual offenses against multiple children who were legally incapable of giving consent. As Dr. Arnold concluded in his evaluation, "despite prior sanctions for virtually identical grooming and sexually exploitive behavior, [Black] was unable to resist the opportunity to reoffend." *Id.* at 426.

B.    Paraphilia NOS is generally accepted within the psychological community

As a threshold matter of law, the trial court correctly ruled that paraphilia NOS is generally accepted as a diagnosis. It is recognized in recent editions of the DSM, which is "a standard reference for clinical practice in the mental health

8

field." DSM-5 at xli. Paraphilia NOS has also been a basis for numerous SVP determinations, and this case does not present any reason to question that precedent. *See, e.g.*, *In re Det. of Stout*, 159 Wn.2d 357, 363, 150 P.3d 86 (2007) (paraphilia NOS, nonconsent); *Halgren*, 156 Wn.2d at 800 (paraphilia NOS, nonconsent); *In re Det. of Coe*, 175 Wn.2d 482, 489, 286 P.3d 29 (2012) (Paraphilia NOS, urophilia, and coprophilia).

Indeed, Black conceded in his briefing that he was not "seek[ing] to challenge . . . generally" the diagnosis of paraphilia NOS, only the specific diagnosis of paraphilia NOS, persistent sexual interest in pubescent aged females. CP at 344; Pet'r's Suppl. Br. at 15. He contends that because sexual interest in pubescent females is not abnormal, it cannot be the basis of a paraphilic disorder evincing a mental abnormality.

The presence of a paraphilic disorder, however, does not turn on whether an individual's sexual focus is abnormal, but on the consequences of that individual's paraphilia in his or her specific circumstances. DSM-5 at 685-86. The DSM makes clear that the eight enumerated paraphilias are a nonexhaustive list because "almost any [paraphilia] could, by virtue of its negative consequences for the individual or for others, rise to the level of a paraphilic disorder."[4] *Id.* at 685.

---

[4] We also note that we have never required that a specific diagnosis be in the DSM before it can be offered as evidence of an individual's mental abnormality. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 857 Wn.2d 989 (1993). For example, in *Young*, we noted that "'[t]he fact

9

Therefore, if a person meets the clinical definition of paraphilia, the question of whether he or she has a paraphilic disorder evincing a mental abnormality depends entirely on the *consequences* of his or her paraphilic preferences.

Black meets the clinical definition of having a paraphilia because persistent sexual interest in pubescent girls is properly specified as a distinct paraphilia in appropriate cases. The DSM defines three broad categories of paraphilic foci, one of which is "children or other nonconsenting persons." DSM-IV-TR at 566. The term "children" is not defined, but it is not limited to prepubescent children (as pedophilia is), and it is undisputed that the child victims of Black's sexual violence were incapable of consenting as a matter of law.

While it may be true that an adult's attraction to adolescents is not necessarily a "mental abnormality" in itself, Black's persistent sexual attraction to pubescent aged females, generally ages 11 to 14, is disordered and evidence of a mental abnormality because of its negative consequences. As a result of his paraphilic focus, he has committed multiple acts of criminal sexual violence against children, served time in prison for those crimes, been ostracized from his family, and ruined other relationships. Accordingly, the trial court did not err as a matter of law when it admitted evidence of paraphilia NOS in this case.

---

that pathologically driven rape . . . is not yet listed in the [DSM] . . . does not invalidate such a diagnosis.'" *Id.* at 28 (quoting Alexander D. Brooks, *The Constitutionality and Morality of Civilly Committing Violent Sexual Predators*, 15 U. PUGET SOUND L. REV. 709, 733 (1992)).

10

C.    The trial court did not abuse its discretion when it permitted expert testimony on the specific nature of Black's paraphilia

Although Black does not challenge the diagnosis of paraphilia NOS generally, he does argue that the trial court erred by allowing Dr. Arnold to testify about the particular paraphilia NOS diagnosis in this case. We review the trial court's decision about the permissible scope of Dr. Arnold's expert testimony for abuse of discretion. *Halgren*, 156 Wn.2d at 802. "A trial court abuses its discretion if the 'exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" *In re Det. of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Black argues that the trial court correctly determined hebephilia is not admissible pursuant to *Frye*, but erred when it nevertheless allowed testimony on the paraphilia NOS diagnosis because, Black reasons, the two diagnoses are synonymous. Black's argument does not account for the purpose of a *Frye* determination, and it ignores the very real differences between a potential paraphilic category of hebephilia and the specific paraphilia NOS diagnosis in this case.

The purpose of a *Frye* hearing is not to verify the accuracy of each discrete conclusion that an expert reaches but to determine whether the expert reached those conclusions by properly applying accepted "*underlying principles*" to the

11

information presented. *State v. Copeland*, 130 Wn.2d 244, 255, 922 P.2d 1304

(1996) (emphasis added). There is no question that the psychological community

generally accepts the reliability of the *underlying principle* that paraphilia NOS is a

valid diagnosis, which may include specifiers indicating the individual's paraphilic

focus where appropriate. That was the only question regarding Dr. Arnold's

testimony on paraphilia NOS that needed to be answered in a *Frye* hearing, and the

trial court correctly determined that the paraphilia NOS testimony offered by Dr.

Arnold was admissible in accordance with *Frye*.

But even if a *Frye* hearing were intended to determine the validity of an

individual expert's particular conclusions, Black overlooks the important

differences between hebephilia and paraphilia NOS, persistent sexual attraction to

pubescent aged females. Hebephilia is a generally unaccepted diagnosis that is

broadly defined as paraphilic attraction to adolescents up to ages 16 or 17. RP

(Sept. 13, 2013) at 75; CP at 1418. This expansive definition encompasses

behavior that may be legal in many states.[5] Meanwhile, paraphilia NOS as

diagnosed in this case describes a very small subset of the adolescent population

covered by a diagnosis of hebephilia.[6] These pubescent aged females could not

---

[5] We do not opine on whether the legality of the behavior plays a role in determining what constitutes a mental abnormality.

[6] At oral argument, the State distinguished between hebephilia and paraphilia NOS by explaining, "If you want to think of it in terms of a Venn diagram, you would have hebephilia as a very large circle with what Dr. Arnold is talking about as a very small circle somewhere within

12

consent to sexual activity with Black as a matter of law, but Black nevertheless repeatedly pursued them as sexual targets.

Finally, Black claims that the trial court unfairly restricted his ability to challenge the paraphilia NOS diagnosis by preventing him from introducing evidence of hebephilia. This assertion is contradicted by statements made at the *Frye* hearing and trial testimony. At the *Frye* hearing, Black's counsel confirmed that the judge's decision did not "in any way limit my ability to cross-examine [Dr. Arnold], including about the issues that were raised today." RP (Sept. 13, 2013) at 161. The judge agreed.

Black challenged Dr. Arnold's diagnosis during a half day of cross-examination. Dr. Arnold conceded that there is professional debate about whether attraction to pubescent aged females is a clinical disorder, and he admitted that sexual attraction to pubescent aged females "most often" is not a paraphilia. 6 VRP (Oct. 29, 2013) at 514, 520. He also acknowledged that there was no research on his paraphilic specifier "persistent sexual interest in pubescent females." *Id.* at 521.

Black's expert also undermined Dr. Arnold's diagnosis. He rebutted the basic principle of the diagnosis by testifying that attraction to pubescence can

---

that circle at the very bottom edge of what constitutes pubescence." Wash. Supreme Court oral argument, *In re Det. of Black*, No. 94494-6 (Jan. 11, 2018), at 27 min., 10 sec., *video recording* by TVW, Washington State's Public Affairs Network, http://www.tvw.org.

never be the basis of a sexual deviancy. 9 VRP (Nov. 4, 2013) at 945-47. He said he had never heard of Dr. Arnold's paraphilic specifier, and he testified at length about why it was inappropriate in general and in Black's case specifically. *Id.* at 944-47. Therefore, the record reflects that Black disputed Dr. Arnold's testimony through rigorous cross-examination and the presentation of his own expert witness.

In sum, we hold that the trial court did not abuse its discretion in admitting expert testimony on paraphilia NOS, persistent sexual interesting in pubescent aged females for purposes of Black's SVP determination.

## CONCLUSION

The trial court did not commit reversible error when it admitted expert testimony on paraphilia NOS, persistent sexual interest in pubescent aged females as evidence of Black's mental abnormality. There is nothing normal about an adult man's inability to control his sexual urges with pubescent aged females. We affirm.

14

_____

WE CONCUR:

Fairhurst, C.J.

González, J.

No. 94494-6

MADSEN, J. (dissenting)—Relying on the fact that "paraphilia not otherwise specified (NOS)" is generally an accepted diagnosis within the psychological community, the majority holds that the trial court properly admitted the State's expert testimony on "paraphilia NOS, persistent sexual interest in pubescent aged females." Majority at 8, 14. The problem, however, is that despite the paraphilia NOS label, the specifically identified condition substantially mirrors a diagnosis identified under another name—hebephilia—that is controversial within the same scientific community. Further, by admitting the State's expert's testimonial evidence—regarding paraphilia NOS, persistent sexual interest in pubescent aged females—but excluding Mark Black's expert's testimonial evidence—regarding hebephilia and the controversy surrounding such diagnosis—the trial court, in my view, improperly excluded rebuttal evidence crucial to Black's defense. For these reasons, as explained below, I dissent.

This civil commitment case concerns the interplay of issues including (1) whether the trial court's admission of certain expert testimony on mental abnormality was proper

under *Frye*[1] and, if not, (2) whether the error was harmless, and (3) disregarding the improper testimony, whether the remaining evidence was sufficient to sustain the jury verdict finding mental abnormality in light of the "alternative means" mental disorders asserted at trial.

Relevant Facts

Shortly before Black was released from incarceration on child molestation convictions, the State filed a petition seeking to commit him as a sexually violent predator. The matter proceeded to a jury trial in 2013.

Dr. Dale Arnold, the State's expert, diagnosed Black with three mental disorders: (1) sexual sadism, (2) paraphilia not otherwise specified (NOS), persistent sexual interest in pubescent aged females, nonexclusive, and (3) personality disorder NOS with antisocial and narcissistic characteristics. Black moved pretrial to exclude Dr. Arnold's diagnosis of paraphilia NOS under *Frye*, ER 702, ER 703, and ER 403, contending that the diagnosis was the same as (or subsumed under) a diagnosis for hebephilia (i.e., persistent sexual attraction to pubescent children), a disorder Black argued should be excluded because it was not generally accepted in the scientific community. The State moved to strike the *Frye* hearing, contending that there was nothing novel in Dr. Arnold's diagnosis.

At the hearing on the motions, Black's expert testified about the controversy and professional criticism surrounding the hebephilia diagnosis. Dr. Arnold did not testify.

---

[1] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

The trial court granted Black's motion to exclude hebephilia evidence but denied his motion as to Dr. Arnold's diagnosis, thereby foreclosing Black from presenting testimony critical of hebephilia to undermine Dr. Arnold's diagnosis.

The jury ultimately found Black met the definition of a sexually violent predator, and the trial court civilly committed him. Following an initial appeal and remand to Division One, the Court of Appeals held that the evidence was sufficient to support the commitment order and that the trial court did not commit reversible evidentiary error.[2] Black sought and was granted this court's review.

<u>Admissibility of Expert Testimony and Harmless Error</u>

Black challenges the trial court's determination that Dr. Arnold's diagnosis of paraphilia NOS involving persistent sexual interest in pubescent females satisfies the *Frye* standard for admissibility of novel scientific evidence. Black contends that Arnold's diagnosis is merely a subcategory of hebephilia, a controversial diagnosis that was rejected for inclusion in the current edition of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013)

---

[2] In the prior appeal of this case immediately following the commitment decision, Division One reversed, holding that the trial court violated Black's right to be present during jury selection. *In re Det. of Black*, 189 Wn. App. 641, 357 P.3d 91 (2015). In light of its retrial decision, Division One did not decide Black's contentions concerning the admissibility of Dr. Arnold's paraphilia diagnosis and sufficiency of the evidence to justify commitment. *Id.* at 658-59. This court granted the State's petition for review, reversed, and remanded to the Court of Appeals for further proceedings. *In re Det. of Black*, 187 Wn.2d 148, 385 P.3d 765 (2016).

On remand, the Court of Appeals reasoned that it need not determine whether Dr. Arnold's paraphilia diagnosis satisfied *Frye* because any trial court admissibility error was harmless because evidence supported the additional diagnoses of sexual sadism and personality disorder, both of which satisfy the statutory definition of a sexually violent predator. *See* RCW 71.09.020(18). For the reasons discussed herein, I disagree.

(DSM-V). *See In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 657-58, 343 P.3d 731 (2015) (Wiggins, J., dissenting) (so noting). Hebephilia is a sexual "attraction to pubescent children." *Id.* at 658. Dr. Arnold diagnosed Black with persistent sexual interest in pubescent aged females, a population that falls within the hebephilia target group. As noted, the trial court granted Black's motion to exclude evidence of hebephilia, but permitted Dr. Arnold to testify regarding his diagnosis of paraphilia NOS.

But Dr. Arnold conceded that his diagnosis was premised on the same science underlying hebephilia, *see* Clerk's Papers (CP) at 841-42, and he created the paraphilia NOS with the specific designation to describe Black's mental status because hebephilia is not a recognized diagnosis.[3] Given Dr. Arnold's concession and other expert testimony

---

[3] Dr. Arnold was asked at deposition, "[H]ow is Paraphilia NOS, Persistent sexual interest in pubescent females, Nonexclusive, different from hebephilia?" CP at 829. He answered as follows:

> [S]o there's eight paraphilias that are listed in the DSM, and that's always been that way since the DSM-III. And when you diagnose somebody and they have a paraphilia that's not included in the DSM, then the instruction is to diagnose Paraphilia Not Otherwise Specified, followed by a description of what it is you think that person is aroused to.
>
> And so that's what I did in this case is I diagnosed Paraphilia NOS, and then I described what it was that I thought was paraphilic for Mr. Black.
>
> In terms of hebephilia, that's a term that's been used in research and in the proposed diagnosis in the DSM-V. But it basically describes somebody who's attracted to somebody who has pubescent features.
>
> So I would say *the underlying concept is the same.* How one refers to it is different because hebephilia is not listed in the DSM, so it wouldn't be appropriate to say the guy is a hebephile, because that's not actually a diagnosis. I would just say the guy has Paraphilia NOS and his paraphilia is being sexually attracted to pubescent-aged females.

*Id.* at 829-30 (emphasis added). When pressed as to any differences between his diagnosis and hebephilia, he replied, "The underlying attraction is the same" and "it's basically the same construct." *Id.* at 831. Again, when asked, "Is the research term 'hebephilia' equivalent to your diagnosis?" Dr. Arnold responded, "It's a term that researchers often use. The underlying construct is the same." *Id.* at 842-43.

at the *Frye* hearing noting the hebephilia designation and validity controversy, in my view, the trial court erred in allowing Dr. Arnold's paraphilia NOS testimony, which Arnold admits is the same diagnosis as hebephilia, just under a different label. "'Evidentiary error is grounds for reversal only if it results in prejudice. . . . An error is prejudicial if, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *In re Det. of West*, 171 Wn.2d 383, 410, 256 P.3d 302 (2011) (alteration in original) (internal quotation marks omitted) (quoting *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001)). Here, the jury deliberated for four days and at one point informed the trial court that it was having difficulty reaching a verdict. CP at 1407. Under these circumstances, had the evidentiary error not occurred, "within reasonable probabilities" the outcome of the trial would have been different. *See id.*

Alternative Means

Assuming that the trial court erred in admitting Dr. Arnold's paraphilia NOS testimony, and thus disregarding that testimony, the sufficiency of the evidence to sustain the jury's verdict becomes doubtful in light of the instructions. To commit Black as a sexually violent predator, the State had to prove beyond a reasonable doubt, among other things, that he suffered from a "mental abnormality or personality disorder" that made him likely to commit future acts of predatory sexual violence if not confined in a secure institution. RCW 71.09.020(18), .060(1). As noted, Dr. Arnold testified that Black suffered from three mental disorders: (1) sexual sadism, (2) paraphilia not otherwise

5

specified (NOS), persistent sexual interest in pubescent aged females, nonexclusive, and (3) personality disorder NOS with antisocial and narcissistic characteristics. The paraphilia NOS and sadism diagnoses were vigorously contested at trial. Black's expert testified and explained why Black's conduct was rough sex, but did not qualify as sadistic, and further testified that adult males' sexual attraction to pubescent females is not deviant.

Whether evidence is sufficient to support civil commitment as a sexually violent predator is reviewed under the criminal law sufficiency standard. *In re Det. of Thorell*, 149 Wn.2d 724, 744-45, 72 P.3d 708 (2003) ("when viewed in the light most favorable to the State, there must be sufficient evidence in the finding of mental illness to allow a rational trier of fact to conclude the person facing commitment has serious difficulty controlling behavior"). While credibility determinations are not reviewable on appeal, as noted, to commit an individual as a sexually violent predator, the State must prove that the individual "suffers from a mental abnormality or personality disorder" that makes the individual likely to commit future acts of predatory sexual violence if not confined in a secure institution. RCW 71.09.020(18), .060(1).

That brings us to *State v. Woodlyn*, 188 Wn.2d 157, 392 P.3d 1062 (2017). In my view, the majority's result is at odds with *Woodlyn*, concerning the alternative mental disorders that were asserted, the way that the jury was instructed, and the general verdict that the jury reached. In *Woodlyn*, we held, "Our precedent addressing alternative means crimes requires unanimity as to means only when a general verdict raises due process

concerns, i.e., *when one or more alternatives presented to the jury are not supported by sufficient evidence." Id.* at 162 (emphasis added). Relevant here, this court opined,

"When one alternative means of committing a crime has evidentiary support and another does not, courts may not assume the jury relied unanimously on the supported means."

*Id.* Explaining what is required, we opined:

> [T]here are particular situations when express unanimity is required, specifically when at least one means lacks sufficient evidentiary support. Washington cases have adopted an analysis that turns on the sufficiency of evidence as a due process concern: if the jury is instructed on one or more alternative means that are not supported by sufficient evidence, a "particularized expression" of jury unanimity as to the supported means is required. The purpose of this requirement is to ensure that when a verdict might be based on more than one alternative, the verdict is adequately supported.

*Id.* at 164 (citations omitted) (quoting *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014)). Explaining the appropriate remedy, we opined:

> A general verdict satisfies due process only so long as each alternative means is supported by sufficient evidence. If there is insufficient evidence to support any of the means, a "particularized expression" of jury unanimity is required. Thus, a reviewing court is compelled to reverse a general verdict unless it can rule out the possibility the jury relied on a charge unsupported by sufficient evidence.

*Id.* at 165 (citations and emphasis omitted) (quoting *Owens*, 180 Wn.2d at 95; *State v. Wright*, 165 Wn.2d 783, 803 n.12, 203 P.3d 1027 (2009)).

Applying *Woodlyn* here, instruction 5 stated in relevant part:

> To establish that Mr. Black is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
> (1) That Mr. Black has been convicted of a crime of sexual violence;

(2) That Mr. Black suffers from *a mental abnormality or personality disorder* which causes serious difficulty in controlling his sexually violent behavior; and

(3) That this mental abnormality or personality disorder makes Mr. Black likely to engage in predatory acts of sexual violence unless confined to a secure facility.

. . . .

Although you must be unanimous in your verdict, mental abnormality and personality disorder are *alternative means* to providing element two. The jury need not be unanimous as to whether *a* mental abnormality or personality disorder has been proven beyond a reasonable doubt *so long as* each juror finds that at least one of these alternative means has been proved beyond a reasonable doubt.

CP at 1385 (emphasis added). The jury delivered a general verdict answering the following two questions affirmatively: (1) "Has the State proven beyond a reasonable doubt that Mr. Black suffers from a mental abnormality and/or a personality disorder that causes serious difficulty in controlling sexually violent behavior?" and (2) "If you answered 'yes' to Question No. 1, has the State proven beyond a reasonable doubt that the mental abnormality and/or personality disorder makes Mr. Black likely to engage in predatory acts of sexual violence if not confined to a secure facility?" *Id.* at 1411.

Here, as discussed above, in my view, the trial court erred in admitting Dr. Arnold's paraphilia NOS testimony, which Dr. Arnold admitted was "the same" diagnosis as hebephilia. CP at 831. Given the presence of such error, and in light of the above instruction and general verdict, under *Woodlyn*, "a 'particularized expression' of jury unanimity as to the supported means is required," and without it reversal of the general verdict is compelled. *Woodlyn*, 188 Wn.2d at 164-65 (quoting *Owens*, 180 Wn.2d at 95). *Woodlyn*'s requirements are not met in this case.

8

Rebuttal Evidence

As discussed above, admission of Dr. Arnold's testimony regarding his diagnosis of paraphilia NOS was improper. But having admitted that testimony, the trial court compounded the error by barring rebuttal evidence of hebephilia and the controversy surrounding it. In so ruling, the trial court severely limited Black's ability to fairly refute the State's evidence.[4] In my view, this circumstance is analogous to a criminal defendant's Sixth Amendment right to present relevant evidence in his defense and such relevant evidence may be excluded only if the State shows it is so prejudicial as to disrupt the fairness of the fact-finding process. *See State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). If the evidence is of "extremely high" probative value—for example if it is essentially a defendant's entire defense—no State interest will be compelling enough to warrant its exclusion. *Id.* at 721-24 (accused rapist's right to defense trumped application of rape shield statute, which would have required exclusion of evidence that alleged victim took money for sex with defendant and others concerning the incident in question). Here, testimonial evidence of the controversy concerning hebephilia was highly probative and crucial to Black's defense as it would have directly undermined Dr. Arnold's paraphilia NOS diagnosis describing an equivalent condition under a different

---

[4] The majority rejects Black's claim that the trial court unfairly restricted his ability to challenge the paraphilia NOS diagnosis by preventing him from introducing evidence regarding hebephilia. In the majority's view, Black had ample opportunity to cross-examine Dr. Arnold and present his own expert testimony. *See* majority at 13. But Black's expert was limited by the exclusion of hebephilia evidence and thus could not inform the jury of the controversy surrounding a hebephilia diagnosis as a disorder. As a result of the trial court's evidentiary rulings, Black's expert was hamstrung and ineffective.

name. I acknowledge that Black sought exclusion of hebephilia evidence. But he did so in the context of seeking the exclusion of Dr. Arnold's testimony, which diagnosed Black with the equivalent of hebephilia. The trial court's ruling, which permitted Dr. Arnold's testimony and barred evidence of hebephilia, in my view was error. *See id.* at 719 (de novo review applies to a claim that the trial court has violated the defendant's right to present a defense).[5]

As noted, the trial court's evidentiary error was not harmless. "Error is harmless 'if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error.'" *Id.* at 724 (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)). As discussed above, within reasonable probabilities the trial court's evidentiary error—admission of Dr. Arnold's paraphilia NOA testimony— affected the outcome of the civil commitment hearing. The same is true here, the trial court's ruling prevented Black from presenting crucial rebuttal evidence. This error was not harmless, and reversal and remand for a new civil commitment hearing is warranted. *See id.* at 724-25.

For the reasons discussed, I dissent.

---

[5] Under these circumstances, the hebephilia controversy rebuttal evidence was clearly relevant and would have been helpful to the jury as it concerned specialized knowledge. No more is required for admissibility under ER 702. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 600, 260 P.3d 857 (2011).

Madsen, J.

Wiggins, J.

Gordon McCloud, J.

Stephens, J.